## DOWDY v. UNITED STATES.

### FUNK v. SAME.

### Nos. 3028, 3038.

Circuit Court of Appeals, Fourth Circuit.
Jan. 13, 1931.

NORTHCOTT, Circuit Judge, dissenting.

John W. Carter, Jr., of Danville, Va., and Julius C. Smith, of Greensboro, N. C. (Brooks, Parker, Smith & Wharton, of Greensboro, N. C., and Carter & Talbott, of Danville, Va., on the brief), for appellant Dowdy.

Charles A. Hammer, of Harrisonburg, Va., for appellant Funk.

E. L. Gavin, U. S. Atty., of Greensboro, N. C., for the United States.

Before NORTHCOTT, Circuit Judge, and GRONER and ERNEST F. COCHRAN, District Judges.

ERNEST F. COCHRAN, District Judge.

The appellants (hereinafter styled the defendants) were convicted under an indictment charging them with conspiracy, under section 37, Criminal Code (U. S. Code, title 18, § 88 [18 USCA § 88]), to violate the prohibition law in a number of particulars. They have appealed separately, but their appeals were heard together in this court, and as some of the grounds of appeal are common, they will be considered together.

The record presents a mass of testimony, and there are fifteen assignments of error in the Dowdy case, and thirty-two in the Funk case. It would serve no useful purpose to set forth a full history and statement of the case in all its various details, or to consider and discuss each assignment of error separately. The important assignments of error will be considered in groups, together with a statement of such parts of the evidence as may be necessary to a proper understanding of the point involved.

Both defendants have assigned error in the refusal of the district judge to strike out certain portions of the indictment. No point has been made in this court that this is not the proper way to test the sufficiency of an indictment; but we are unwilling, by passing over the matter silently, to countenance apparently this practice. The sufficiency of an indictment may be tested by a motion to quash or by a demurrer; but neither of those methods may be directed to the insufficiency of a portion only of the indictment. The indictment must stand or fall, when thus attacked, as a whole. Nor is a motion to strike out a portion of the indictment a proper procedure. The Supreme Court has held that the court cannot strike out a portion of an indictment. Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849. A part of an indictment may be treated as surplusage, and rejected; but it may not be stricken out. Ford v. U. S., 273 U. S. 593, 602, 47 S. Ct. 531, 71 L. Ed. 793. If a portion of the indictment is not sustained by the evidence, that part of the charge may be withdrawn from the consideration of the jury on that ground. Salinger v. U. S., 272 U. S. 542, 548, 47 S. Ct. 173, 71 L. Ed. 398. See also Goto v. Lane, 265 U. S. 393, 402, 44 S. Ct. 525, 68 L. Ed. 1070.

In the present case, the district judge did not strike out any portion of the indictment. When the district attorney conceded that certain overt acts alleged in the indictment could not be sustained, he withdrew those portions from the consideration of the jury. When it developed, upon the evidence, that certain other overt acts were not sustained, he withdrew those acts from their consideration. A number of other overt acts, however, he refused to withdraw from their consideration, and the defendants have assigned error in

that respect. Treating their motion to strike those overt acts from the indictment as practically a motion to withdraw them from the consideration of the jury, we have considered the assignments of error based thereon and find them without merit. They are therefore overruled.

Both defendants, however, presented certain objections to the indictment by motions to quash. The indictment is very voluminous. It alleges, in substance, that the defendants and one Charlie Martin (the indictment reciting that Martin was not indicted for the reason that he was used as a witness) and other unknown persons formed a conspiracy in the Middle District of North Carolina to manufacture, possess, transport, barter, sell, furnish, and deliver intoxicating liquor in that district and in other states and places unknown. It was further alleged that Dowdy and Martin were to manufacture, possess, transport, barter, sell, furnish, and deliver intoxicating liquor at wholesale and retail, and that Funk (who was a prohibition officer) should aid and assist them by keeping them informed as to the movements of federal agents, warning them, acting as their adviser, and refraining from arresting them or any of their agents; and that he was to be paid by Dowdy and Martin for his services. The indictment then sets forth twenty-six overt acts alleged to be in furtherance of the conspiracy and to effect its object. A number of overt acts are alleged to have been committed in the Middle District of North Carolina and others in other states and places.

It is first objected that the indictment sets forth several independent and distinct conspiracies. This objection cannot be sustained. The indictment sets forth one conspiracy formed in the Middle District of North Carolina with a number of overt acts to effect the object of that conspiracy. On the face of the indictment, there is nothing to show that there were several distinct conspiracies.

The fact that the conspiracy contemplated numerous violations of law as its object does not make the indictment duplicitous. The gist of the offense is the conspiracy, and it is single, though its object is to commit a number of crimes. Frohwerk v. U. S., 249 U. S. 204, 209, 210, 39 S. Ct. 249, 63 L. Ed. 561; Ford v. U. S., 273 U. S. 593, 602, 47 S. Ct. 531, 71 L. Ed. 793; Norton v. U. S. (C. C. A. 5th) 295 F. 136; Rudner v. U. S. (C. C. A. 6th) 281 F. 516; Remus v. U. S. (C. C. A. 6th) 291 F. 501; Anderson v. U. S. (C. C. A. 8th) 273 F. 20.

It appears also that some objection was made to the indictment on the ground that the venue was not properly laid; but it is well settled that in a conspiracy charge the venue may be laid either in the district where the conspiracy was actually formed or in any district where an overt act was done by any one of the conspirators in furtherance of the common design. Hyde v. U. S., 225 U. S. 347, 365, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Hyde v. Shine, 199 U. S. 62, 76, 25 S. Ct. 760, 50 L. Ed. 90.

Other objections were made to the indictment, but it is not necessary to discuss them. It is sufficient to say that we have carefully considered them and that there is no merit in them whatever. All the objections, therefore, to the sufficiency of the indictment are overruled.

Both defendants have assigned error to the ruling of the District Court in refusing to permit Mrs. Funk, the wife of the defendant Funk, to testify. Before the defendant Funk rested his case, he called her as a witness on his own behalf, and the court ruled that she was not competent, and he thereupon excepted to the ruling and rested his case. The defendant Dowdy then called Mrs. Funk as a witness, and the court inquired whether she could testify to anything that was not in behalf of her husband; and Dowdy's attorney thereupon said that it was in defence of her husband as well as of Dowdy. The court thereupon ruled that she was not a competent witness for Dowdy, to which Dowdy excepted.

In the federal courts, the rule has prevailed for many years that in a criminal trial, the wife of a defendant is not a competent witness in his behalf. Jin Fuey Moy v. U. S., 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214; Hendrix v. U. S., 219 U. S. 79, 31 S. Ct. 193, 55 L. Ed. 102; Barton v. U. S. (C. C. A. 4th) 25 F.(2d) 967; Fisher v. U. S. (C. C. A. 4th) 32 F.(2d) 602, 604; Krashowitz v. U. S. (C. C. A. 4th) 282 F. 599.

The federal courts have also held that where two or more defendants are jointly indicted and jointly tried, the wife of one of them is not a competent witness for a codefendant of her husband. Israel v. U. S. (C. C. A. 6th) 3 F.(2d) 743, 745; Haddad v. U. S. (C. C. A. 6th) 294 F. 536; Talbott v. U. S. (C. C. A. 5th) 208 F. 144; U. S. v. Davidson (D. C.) 285 F. 661.

Certainly, where the testimony of a wife for a codefendant will inure to the benefit of her husband, as was conceded to be the case

here, she is not a competent witness. Israel v. U. S., supra.

It has been very earnestly argued, however, that the decisions of the Supreme Court in the Jin Fuey Moy and Hendrix Cases, supra, are not to be taken as ruling positively that the wife is not a competent witness, in view of the decision of that court in the case of Rosen v. U. S., 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406. Our attention is also called to the case of Rendleman v. U. S. (C. C. A. 9th) 18 F.(2d) 27, which holds that a wife is not incompetent to testify in behalf of her husband in a criminal case. It is to be observed that the Supreme Court decision in the Rosen Case was rendered before the decision in the Jin Fuey Moy Case. After due consideration, we are of opinion that the Supreme Court has definitely held that a wife is not a competent witness in such cases. This court has consistently followed these decisions and feels bound to observe the rule so long deemed settled, until there is a decision of the Supreme Court to the contrary.

Compare Tinsley et al. v. U. S. (C. C. A. 8th) 43 F.(2d) 890.

The defendant Dowdy assigns error to the refusal of the district judge to grant him a severance. The granting of a severance where two or more are jointly indicted rests in the sound discretion of the trial judge. The defendant Dowdy, however, while conceding the general rule, argues that in this particular case a severance should have been granted, in order that Mrs. Funk might testify in his behalf. The motion for a severance was not based upon that ground, and no ruling in that respect was made by the trial judge; and this assignment of error might very well be overruled for that reason alone. But in order to avoid any misapprehension, we deem it proper to say that we would not be disposed to interfere with the discretion of the trial judge on that ground. Where two or more defendants are indicted for a joint transaction, it is inadvisable to split up the case into many parts for separate trials, in the absence of very strong and cogent reason therefor. This is especially true in conspiracy charges, from the very nature of the case. It is not necessary to decide now whether a wife whose testimony is favorable to her husband would be or not a competent witness to testify to the same facts in favor of a codefendant who had been granted a severance. It is sufficient to say that, assuming (without deciding) that she would be competent, nevertheless the granting of a severance would still rest in the discretion of

the trial judge; and we would not, on that ground alone, interfere with the exercise of his discretion. This assignment of error of the defendant Dowdy must also be overruled.

The defendant Dowdy assigns error also to the action of the lower court in refusing certain instructions. Some of these instructions are based upon the same grounds as the motion for direction of a verdict and are covered by what is said hereafter upon that motion. As to certain of the instructions, the ruling of the district judge was plainly right and no discussion is needed. As to the remaining instructions which were refused, they were fully covered by the judge's general charge.

But the main ground, and most serious contention of the defendant Dowdy, is upon the refusal of the district judge to direct a verdict in his favor. In the consideration of this ruling, under the familiar rule, it is necessary that the evidence be considered in its most favorable aspect to the government. We have carefully considered all the evidence presented by the record, but it will not be necessary to state it in all its details. The only evidence in the record which tends to connect the defendant Dowdy with the conspiracy charged is substantially as follows:

Martin testified positively to the unlawful agreement between him and Funk, whereby Funk should give him and his employees protection, and aid and assist him in his violations of the prohibition law. Martin fixed the time of this agreement at some time after September 28, 1928. He stated that this agreement was made in Virginia, but there were numerous overt acts to effect the object of this agreement between him and Funk in the Middle District of North Carolina. There was considerable evidence corroborating Martin, so far as his transactions with Funk were concerned. Martin did not testify that Dowdy was a party to this agreement or that he knew anything about it. Nor was there any evidence to connect Dowdy with the unlawful agreement between Martin and Funk. Dowdy and Martin both resided in Virginia. Martin testified that Dowdy was in the liquor business. He also testified that he (Martin) had a place for the storage of his liquor in Virginia, and that his employees and Dowdy's employees took their liquor from this common storage place as they needed it, and would borrow or swap liquor as occasion demanded; but there was nothing in his testimony from which the jury could infer that they were partners in the general

business of transporting and selling liquor. There was also other evidence from which the jury might infer that Dowdy was engaged in the liquor business. The most that can be claimed from this evidence is that Martin and Dowdy had an unlawful agreement for the storage of their liquors which would constitute a conspiracy to violate the prohibition law by having unlawful possession of liquor. But this conspiracy between Martin and Dowdy was confined to Virginia and there is no evidence that any overt act in pursuance of *that* conspiracy was ever committed by any of the parties in the Middle District of North Carolina. There was also evidence on the part of the government tending to show association, not only between Martin and Dowdy, but between Dowdy and Funk. The evidence showed that some time prior to the time Martin fixed as the date of the unlawful agreement between him and Funk, Dowdy had been with Funk several times and had obtained Funk's assistance relative to the arrest of a man named Stewart Price, and also relative to the prosecution of a man named Riddle. The record shows that Price was under prosecution; Dowdy was upon his bond; that Price had defaulted; that Dowdy was trying to have him arrested, and engaged Funk's services in that respect. The record also shows that one Riddle had stolen an automobile supposed to belong to Dowdy, and that Funk had assisted Dowdy in that matter also. Both the Price and Riddle transactions were before the time fixed by Martin as to his unlawful agreement with Funk; and the evidence does not show that the cooperation between Dowdy and Funk was for any other purpose than a lawful purpose. It did tend to show previous association and no more.

Martin also testified that a short time prior to the time he fixed as the date of his unlawful agreement with Funk, Funk came to him and told him that a prohibition officer had bought whisky from Martin's wife and sister, but that he (Funk) thought he could get it stopped for a consideration; and that he paid money to Funk for that purpose, and was told by Funk that the matter had been arranged. There was evidence on the part of the government tending to corroborate Martin's statement in this respect. The various witnesses, however, all testified that no such sale was made by Martin's wife or sister, and in that aspect, the testimony, if true, showed a case of blackmail on the part of Funk. The only evidence to connect Dowdy with this transaction was the testimony of Martin to the effect that he went to Dowdy and stated the facts to him and asked his advice

about complying with Funk's suggestion; but that Dowdy said he could not advise him, but left him under the impression that he had better not do it. Martin further testified that he obtained some money from Dowdy for that purpose, but that the money was his own that he had deposited with Dowdy for safe-keeping, and that Dowdy lent him his automobile to make the trip to Roanoke, where Funk was to consummate his suggestion.

The government also showed two telephone calls by Funk to Dowdy; but the nature of these calls was not shown. The record is silent as to whether they were for lawful or unlawful purposes.

The government relies in its case against Dowdy also upon an incident which occurred during the trial. This evidence was not presented by the government, but by the defendant Funk in his defence. It was to the effect that during the trial of the case, the government's chief witness Martin and the defendant Dowdy occupied the same room in a hotel, and that during the night there was some drinking and loud talking there and Martin was heard to say that he had to lie in his testimony that day during the trial. The inference is sought to be drawn by the government that this testimony shows that Martin was trying to protect Dowdy in his testimony; but we cannot see that it adds anything to the strength of the government's case beyond the fact that Dowdy and Martin at that time were friendly, and associating together. It could not help the government to connect Dowdy with the case, for it to be shown that its main witness, Martin, was testifying falsely.

We have searched the record carefully, and if there is any other evidence than what is stated above to connect Dowdy with the conspiracy charge, we have been unable to find it. We do not think such evidence sufficient to sustain a conviction of Dowdy under this particular indictment. The indictment charged a conspiracy formed in the Middle District of North Carolina, and the evidence, if believed, showed an unlawful agreement entered into in Virginia between Martin and Funk to violate the prohibition law in a number of particulars and a number of unlawful acts in pursuance of that agreement in the Middle District of North Carolina; but there is no evidence to connect Dowdy with *that* conspiracy or to show that he had any knowledge of it or participation in it; nor does the evidence show that he had any connection with the numerous overt acts

committed in the Middle District of North Carolina in connection with that conspiracy. The most that can be claimed for the government is that there was an unlawful agreement between Martin and Dowdy in Virginia for the possession of intoxicating liquors, but that unlawful agreement was entered into in Virginia, and all overt acts, so far as the evidence discloses, to effect the object of that conspiracy were committed in Virginia. A conviction of that particular conspiracy between Martin and Dowdy cannot be sustained under the present indictment for two reasons: First, it was a separate and distinct conspiracy from the conspiracy charged and proven; and, secondly, the offense was committed entirely in Virginia, and would be justiciable in the proper district in that state and not in the Middle District of North Carolina.

Compare Tinsley et al. v. U. S. (C. C. A. 8th) 43 F.(2d) 890.

It seems to be the theory of the government that the conspiracy proved was one between Dowdy and Martin, and that later Funk came into that conspiracy; and from the charge of the district judge, that was apparently his view in submitting the case to the jury. There can be no doubt that where two or more persons form a conspiracy, and others later enter into that conspiracy, it is one conspiracy, and all are equally bound, where overt acts are committed in pursuance of it. But the government's difficulty in this case is that there is no evidence connecting Dowdy and Funk, save association, and two telephone calls, and the Price and Riddle incidents above alluded to, all of which were apparently lawful. In brief, assuming that there was a conspiracy between Martin and Dowdy, there is no evidence that Funk came into it, but, on the contrary, the evidence shows that the conspiracy between Funk and Martin was a separate and independent one.

The evidence, if believed, presents a strong suspicion that Dowdy may have been the beneficiary of Martin's transactions with Funk; but suspicion cannot suffice. There must be proof from which the facts necessary to establish guilt can be reasonably inferred, before a case should be submitted to a jury. For these reasons, we think the learned judge was in error in refusing the motion of the defendant Dowdy to direct a verdict in his favor, and the judgment as to Dowdy must therefore, for that reason, be reversed, and a new trial granted.

The defendant Funk assigns error to the effect that he was refused a bill of particulars. We have been unable to find anything in the record showing that such a motion was denied or even made. In any event, a motion for a bill of particulars is addressed to the sound discretion of the trial judge, and there is nothing in the record before us to show any abuse of that discretion.

The defendant Funk also assigned error to the refusal of the District Court to direct a verdict in his favor; and upon this assignment, little need be said. Martin testified positively to the unlawful agreement, the numerous overt acts pursuant thereto, the various telephone calls, and his association with Funk, and there was evidence from other witnesses corroborating him in many particulars. This evidence, if believed by the jury, was ample to convict Funk. It is true that Martin was shown by his own admissions to have been convicted of a large number of criminal offenses of various kinds and appears to have been a man of bad character; and a number of witnesses testified to the good character of Funk; and Funk's counsel has very earnestly stressed these facts. But these are all matters for the jury. The refusal of the court to direct a verdict in favor of Funk was plainly right, and the assignment of error on that ground must be overruled.

The defendant Funk assigns error in the admission of certain declarations and statements made by Martin prior to the trial. These assignments are very numerous, but they may be classified and considered under four general heads: (1) Declarations of Martin prior to his arrest and admitted as declarations of a coconspirator; (2) declarations of Martin made prior to his arrest and admitted for the purpose of corroborating merely; (3) evidence of a telephonic conversation between Martin and Funk after Martin's arrest; (4) evidence of statements made by Martin after his arrest to D. C. Trexler, a special inspector of the Prohibition Bureau.

As to the first class, namely, those which were admitted by the court as the declarations of a coconspirator: In all of this class the declarations were made before the conspiracy was terminated and the court in admitting them, cautioned the jury that they were not to be considered as against the defendant Funk, unless they should find that a conspiracy existed and that the declarations or statements were made in furtherance of the conspiracy and to effect its object. As to a few of these declarations of Martin, the objection was made that the declarations

were made prior to the time Martin fixed as the date of the agreement between him and Funk; but there was evidence from which the jury might have inferred that the conspiracy between Martin and Funk had its incipiency at an earlier date. No citation to authority is necessary to sustain the proposition that the acts and declarations of a co-conspirator, made in furtherance of the conspiracy and during its continuance, are binding upon all the conspirators. The jury having been cautioned by the trial judge in this case that the declarations were only binding in case they found a conspiracy existed and that the declarations were in furtherance of it, all the assignments of error relative to the admission of this class of declarations must be overruled.

As to the second class, namely, those declarations made prior to Martin's arrest, which were admitted simply for the purpose of corroborating his testimony upon the witness stand: The courts have not been uniform in their decisions relative to the extent to which evidence of a witness' previous statements may be admitted to corroborate his statements upon the witness stand and thereby show the consistency of his testimony. In the early days of the common law, the notion prevailed that a witness could always be corroborated, without any limitation, by the circumstance of having made at other times, statements consistent with the testimony delivered in court—a practice based on a loose, instinctive logic, popular enough even to-day, that there is some real corroborative support in such evidence. 2 Wigmore, Ev. § 1125. But the lack of a logical foundation for a rule of such breadth, and the dangers attending the admissibility of such evidence without limitations, have been perceived and appreciated, and there can be no doubt that in modern times the general rule is that a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony. 40 Cyc. 2787, text and cases cited in notes; 2 Wigmore Ev. §§ 1122–1129; Ellicott v. Pearl, 10 Pet. 412, 439, 9 L. Ed. 475; Vicksburg & Meridian, etc., v. O'Brien, 119 U. S. 99, 7 S. Ct. 118; 30 L. Ed. 299; Inman Bros. v. Dudley (C. C. A. 6th) 146 F. 449, 455; Southern Pacific v. Schuyler (C. C. A. 9th) 135 F. 1015, 1017.

But there are numerous cases which hold that where a witness has been assailed on the ground that his story is a recent fabrication or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when motives of interest would have induced a different statement, is admissible. But in order to bring the case within this rule, it must appear that the conversation occurred soon after the transaction, is consistent with the statements made on oath, was made before any motive to fabricate could exist, and contains such fact or facts pertinent to the issues involved as reasonably furnish to the jury some test of the witness' integrity and accuracy of recollection; and such evidence should never be admitted until the witness has been in some way impeached; and the jury should be carefully cautioned that the evidence is to be considered only as affecting the credibility of the witness; and it should never be admitted as substantive or independent supporting testimony. 40 Cyc. 2789, text, notes, and cases cited; Di Carlo v. U. S. (C. C. A. 2d) 6 F. (2d) 364; Boykin v. U. S. (C. C. A. 5th) 11 F.(2d) 484, 486.

See also Wigmore Ev., §§ 1122–1129, where the whole subject is fully discussed.

Compare remarks of Mr. Justice Story, arguendo, in Ellicott v. Pearl, 10 Pet. 412, 439, 9 L. Ed. 475.

In our opinion, in admitting this class of evidence, the court should be extremely guarded and admit it only subject to the proper restrictions and conditions prescribed; for otherwise a designing witness might easily prepare the foundation for corroborating his testimony in this manner, and impose upon the court and jury and bring about a miscarriage of justice. In this case, so far as those statements of Martin admitted for the purpose of corroborating him alone, which were made before his arrest, we think they met the requirements of the rule. At the very outset of the case, it was evident that the defence was making a strong attack on Martin and claiming that his whole story was a recent fabrication, induced by the motive on his part to shield himself as far as possible from his own previous criminal acts. The declarations admitted appear to be consistent with his testimony at the trial. The court cautioned the jury that they were to receive it merely in corroboration and not as substantive evidence. Without adverting to all the circumstances of this particular case, we deem it sufficient to say that we have examined this evidence carefully, and we do not think that any error has been shown, and all the assignments relating to this class of evidence will therefore be overruled.

As to the third class, namely, the evidence of the statements made in a telephone conversation between Martin and Funk after Martin's arrest: It appears that D. C. Trexler, special inspector for the Prohibition Bureau, who was then investigating the activities of Funk as a prohibition agent, approached Martin some time after his arrest with a view to obtaining some statement from him. It is not clear from the record whether Martin was then in custody or out upon bond; but apparently he was not in actual custody. Martin, in a certain hotel room, called Funk over the long-distance phone and talked with him in the presence of Trexler and another government officer. Both officers testified that they recognized Funk's voice over the phone and heard the conversation. It is not necessary to set forth this telephone conversation, but it is sufficient to say that it was of an incriminating nature. Under this state of facts, we think this evidence was properly admitted, and the assignments of error relative thereto will be overruled.

This brings us to the consideration of the evidence under the fourth class, namely, the statements made by Martin to D. C. Trexler after his arrest, and not in the presence of Funk. It is not clear from the record just when Martin was arrested. But it appears to have been about March 4, 1929. A short time after his arrest, Inspector D. C. Trexler, as above stated, had a conversation with Martin in the hotel, and at that time Martin called up Funk and had with him the conversation above referred to. But after the phone had been disconnected and after the telephone conversation between Martin and Funk had been discontinued, Martin then made a long and detailed statement to Trexler of his transactions with Funk. At that time, Trexler knew that Martin had been arrested and was under charges of violating the prohibition law, and of course Martin knew it. In this statement Martin told Trexler of his agreement with Funk, his numerous telephone conversations with him relative to being warned and advised of impending action by federal officers, his payment of money to Funk for his services, and, in short, all of his unlawful transactions with Funk in every particular and detail. His statement was in effect a confession of all his violations of law, implicating Funk.

We think the admission of this testimony was error. It is not admissible as a declaration of a coconspirator, because the conspiracy was apparently terminated. But even assuming that it was still in existence, the statements of Martin were not in furtherance of the conspiracy. It is well settled that before such a statement or declaration is admissible, it must not only be made during the continuance of the conspiracy, but it must be made in furtherance of it. These statements were nothing more than a confession by Martin implicating Funk, and all the authorities hold that they are inadmissible, except as against the party making them. Upon that point, we think the decision of this court in a very similar case is conclusive. Hauger v. U. S. (C. C. A. 4th) 173 F. 54.

See also Logan v. U. S., 144 U. S. 263, 308, 12 S. Ct. 617, 36 L. Ed. 429.

It appears, however, that these statements made to Trexler were admitted for the purpose of corroborating Martin. There is a statement in the record to the effect that the court instructed the jury that the statements made by Martin were admitted only for the purpose of corroboration and for no other purpose. But it is not entirely clear from the record whether this referred to the whole of this testimony. But assuming, however, that it was admitted for that purpose, and that the jury were sufficiently cautioned, nevertheless we do not think that it was admissible. Martin had been arrested on numerous charges which were then pending. The National Prohibition Act itself (tit. 2, § 30 [U. S. Code, title 27, § 47, 27 USCA § 47]) gave him immunity if he should testify. In view of all the surrounding circumstances, it is obvious that a motive to testify falsely existed then fully as much as it did at the time of the trial. The conversation in which the statements were made did not occur soon after the transactions that he detailed, but long afterwards. Nor do we think that statements made in such circumstances would reasonably furnish the jury a test of the witness' integrity and accuracy of recollection. As already stated, these statements were nothing more than a confession implicating others; and to allow such evidence to go to the jury would not only be exceedingly dangerous to the innocent, but subversive of the fundamental rights of the accused in a criminal trial.

The counsel for the government, however, cites certain decisions of the Supreme Court of North Carolina in support of his contention that this and similar testimony is admissible; and it is probable that the learned judge who tried the case relied upon the North Carolina practice in that respect. In

426

that state, the rule appears to be established that when a witness has given evidence and his credibility is impugned, whether by proof of general bad character, contradictory statements, or by cross-examination tending to impeach his veracity or memory, or at times by his very position in reference to the cause and the parties, "in whatever way the credit of the witness may be impeached," evidence of his previous statements is admissible in corroboration. Nor does it signify whether the previous statements are near or more remote from the occurrence, nor ante litem motem, or pending the controversy. In other words, it appears that in that state, the restrictions and conditions attaching to the admissibility of such evidence, as laid down in other jurisdictions by the great weight of authority, do not obtain. State v. Pace, 159 N. C. 462, 74 S. E. 1018; State v. Neville, 157 N. C. 591, 72 S. E. 798; Chrisco v. Yow, 153 N. C. 434, 69 S. E. 422; Cuthbertson v. Austin, 152 N. C. 336, 67 S. E. 749; Matthews v. Metropolitan Ins. Co., 147 N. C. 339, 61 S. E. 192, 18 L. R. A. (N. S.) 1219; State v. Exum, 138 N. C. 599, 50 S. E. 283.

See also North Carolina cases cited in Note 38, 40 Cyc. 2788.

It is stated in some of the North Carolina decisions that in England, New York, and other jurisdictions, this species of evidence is received under restrictions and modifications not recognized in that state, and it is clear that the North Carolina rule is contrary to the great weight of authority.

See Cuthbertson v. Austin, supra; State v. Exum, supra.

It appears also that in North Carolina, there is a rule of court governing the admission of such evidence. Matthews v. Metropolitan Ins. Co., supra.

We do not think that the federal courts in a criminal case should be bound by or follow these decisions. With great deference to the views of that court, we think the admission of such evidence, practically without restriction or limitation, is fundamentally unsound, and destructive of the most vital rights of one accused of crime.

 The counsel for the government, however, has argued that the case should not be reversed on that ground because, as he claims, the objection was not seasonably made at the trial. Indeed, he hardly defended the admissibility of this testimony; but the greater portion of his argument on this matter was devoted to his contention that no seasonable objection was made. It is true that the record does not disclose that the error in the admission of this testimony of Trexler's was pointed out as clearly and distinctly to the trial judge as it might have been; but we think when the whole record is considered, it will be seen that both the counsel for the government and the trial judge were sufficiently apprized that the defendant Funk was objecting to this class of testimony and relying upon his objection. Before Trexler was sworn, numerous objections had been made to admitting any of the declarations of Martin, and were overruled and exceptions noted. The record shows that at the very outset of Trexler's testimony, he was asked what was said by Martin to Trexler before Funk was called upon the telephone. The defendants objected. The objection was overruled, and they both excepted. The witness was thereupon permitted to state that Martin had told him before that about the telephone calls he had with Funk and that he would call him whenever he wanted to, and that Funk had given him information as to the whereabouts of the officers. The defendants again objected, and the court overruled the objection, and stated that the statement was admitted only for the purpose of corroborating the testimony of Martin; to which ruling the defendants excepted. Trexler then testified relative to the telephone conversation he heard between Martin and Funk, which has been discussed above under the third class, and which we have held was properly admitted. Trexler was then asked by the district attorney to state what Martin had told him, relative to a certain telephone call between Funk and Martin in September, 1928; to which the defendants again objected. The objection was overruled, and the defendants excepted. Trexler then testified fully as to what Martin told him of this conversation. Trexler was then asked what Martin had told him with reference to certain other transactions with Funk; and the record states that the defendant in apt time objected to any statements made after March 4, 1929. Trexler then testified in detail to all of Martin's statements to him relative to his various transactions with Funk; the agreement, telephone calls, the payment of money, and other statements Martin made, incriminating Funk. After the government was thus distinctly apprized of the objections of the defendants to this class of testimony, we do not think that the defendants were called upon to object repeatedly to every specific statement that Mar-

tin made to Trexler. The testimony of Trexler in this respect was exceedingly lengthy and voluminous, and after the court had ruled clearly that it would be admitted, it would have subserved no useful purpose for the defendants to be constantly objecting on the same ground.

It is said, however, that the admission of Trexler's testimony was not prejudicial. We are not unmindful of the effect of section 269 of the Judicial Code, as amended by the Act of February 26, 1919 (U. S. Code, title 28, § 391 [28 USCA § 391]), whereby, on the hearing of an appeal, we are required to give judgment after an examination of the entire record, without regard to technical errors or defects, which do not affect the substantial rights of the parties. This salutary legislation has been construed in a number of cases and frequently applied in this circuit. Workman v. U. S. (C. C. A. 4th) 43 F.(2d) 44, 45; Clarksburg Trust Co. v. Commercial Ins. Co. (C. C. A. 4th) 40 F.(2d) 626, 634; Chesapeake & Ohio Ry. Co. v. Cochran (C. C. A. 4th) 22 F.(2d) 22, 26, and cases cited; Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co. (C. C. A. 4th) 11 F.(2d) 87, 91.

But we cannot overcome the impression that permitting Trexler to testify in detail to all of Martin's various and lengthy statements to him, implicating Funk, must have been prejudicial. It is true that Martin testified practically to all of these same matters upon the witness stand; and to a discriminating mind, the fact that Martin had made the same statements to Trexler that he made upon the stand might not have added any weight to his testimony. But jurors are not trained in such matters. The testimony was admitted *as corroborating Martin,* and the jury must have received the impression that it had that effect. We are of opinion therefore that the admission of this testimony was prejudicial error, and the judgment against Funk must be reversed and a new trial granted him, but on that ground alone.

The assignments of error (of both Dowdy and Funk) which are not covered by the foregoing opinion are unimportant and without merit, and are overruled.

The judgment of this court is that the judgment of the District Court in both cases, to wit, Nos. 3028 and 3038, be reversed, and the cases remanded for a new trial in accordance with this opinion.

Reversed.

NORTHCOTT, Circuit Judge, dissents.