UNITED STATES of America, Appellee,

v.

Clarence Gene LEGGETT, Appellant.

No. 8611.

United States Court of Appeals Fourth Circuit.

Argued Sept. 28, 1962.

Decided Dec. 19, 1962.

568

Daniel R. Dixon, Raleigh, N. C., for appellant.

Alton T. Cummings, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and JOHN PAUL, District Judge.

JOHN PAUL, District Judge.

The appellant is here on appeal from a conviction for violation of Sect. 912 of Title 18 U.S.C., which is as follows:

"Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

At the trial the appellant insisted on representing himself and specifically declined the offer of the court to appoint counsel. As usually occurs when a layman undertakes to act as his own counsel, the record discloses much immaterial and irrelevant testimony and pointless argument presented by the appellant. He did, however, question the action of the court in several respects which he assigns as error. In this court he has been represented by counsel of his own choosing.

The first assignment of error relates to the indictment, which is in the following language:

"The Grand Jury charges:

"That on or about the 20th day of September, 1961, in the Eastern District of North Carolina, CLAR-

ENCE GENE LEGGETT, alias Clarence Eugene Leggett, alias Gene Leggett, did falsely assume or pretend to be an officer acting under the authority of the Federal Bureau of Investigation and acted as such, to wit, on the above date CLARENCE GENE LEGGETT, alias Clarence Eugene Leggett, alias Gene Leggett, represented himself to be a Special Agent of the Federal Bureau of Investigation, stationed at Raleigh, North Carolina, and in such assumed or pretended character demanded and obtained registration cards of the Sea Oatel, Nags Head, North Carolina, in violation of the provisions of Title 18, U. S. Code, Section 912."

Prior to his arraignment the appellant filed a motion to dismiss the indictment, which was denied. While this motion set out several grounds, only one of these is insisted upon in this court. It is as follows:

"The said indictment is self-contradictory and ambiguous in that it alleges certain facts therein to be one offense when said allegations constitute and comprise two offenses as a matter of law."

It is asserted that the statute (18 U. S.C. 912) defines two separate offenses and that the indictment is violative of the established principle embodied in Rule 8(a) of the Rules of Criminal Procedure, to the effect that where a defendant is charged with two or more offenses they must be set forth in separate counts. It is urged that the court should have dismissed the indictment or, at least, have required the Government to elect on which offense it would proceed to trial.

We are of opinion that the contention of appellant is well taken and that there was error in the denial of appellant's motion. It is well settled that the statute in question defines two separate offenses. The statute is not a recent one. It has been several times amended, but only to clarify or simplify its language or

extend its scope. In the case of United States v. Barnow (1915), 239 U.S. 74, 75, 36 S.Ct. 19, 60 L.Ed. 155, the Supreme Court, dealing with what was then Sect. 32 of the Criminal Code of 1909, made it clear that that predecessor of the present statute set out two separate offenses. Numerous cases have repeated and emphasized this holding. As said by Judge Phillips in Elliott v. Hudspeth (C.C.A. 10), 110 F.2d, 389, 390:

> "The statute defines two separate and distinct offenses, one, the assuming and pretending to be an officer or employee acting under the authority of the United States and taking it upon himself to act as such, the other, in such pretended character, demanding or obtaining any money, paper, document, or other valuable thing." See also Graham v. Squier (C.C.A.9), 145 F.2d 348; Shepherd v. United States (C.C.A.10), 191 F. 2d 682, 683; Kane v. United States (C.C.A.8), 120 F.2d 990, 993; Pierce v. United States (C.C.A.6), 86 F.2d 949, 951; United States v. Taylor (D.C.8), 108 F. 621; United States v. Carr, D.C., 194 F.Supp. 144.

Government counsel while not denying that the statute defines two separate offenses still insists that the indictment here comprises only one. The contention appears to be that the indictment is saved from duplicity by the use of the phrase "to-wit" which follows the words "acted as such"; with the result that the second clause of the indictment is merely a recital of what the appellant did while "acting as such" officer. Or, in other words, that the second clause merely sets out the particular act necessary to establish that the defendant "acted as such" officer.

The fault in this argument is that it assumes that an indictment charging a defendant under the first clause of the statute is insufficient unless it sets out the particular things which the defendant did and which constituted the "acting as such officer." In fact, counsel for the

Government argues that it is necessary to allege what he calls the "overt acts" in order to show the respects in which the defendant "acted as such" officer, and which in this case were acts condemned in the second part of the statute. The argument is unsound. On the contrary, it is well settled that an indictment which alleges that the pretended officer "acted as such" is complete and sufficiently states the first of the two separate offenses defined by the statute. See the cases hereinbefore cited. In this connection counsel cites the cases of United States v. Lepowitch, 318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091, and Ekberg v. United States, 1 Cir., 167 F.2d 380, both of which were multiple count indictments, and neither of which supports the Government's contention.

The Lepowitch case, in a brief opinion, deals with a matter foreign to that presented here. The Ekberg case involved a three-count indictment and in discussing this case the Government brief states:

> "The first count was under the first clause of the statute but was defective in failing to allege an overt act under the pretended character."

Counsel have grievously misunderstood what this case held. The count in question, after alleging that the pretended officer "acted as such", then went on to add "in that" he committed certain particular acts. In other words, the indictment undertook to allege what counsel term the "overt acts" which constituted the 'acting as such officer." The court held the count bad, not because of failure to allege any "overt act" as counsel assert, but because the particular acts alleged under the "in that" clause were not such as to show that the pretended officer had "acted as such," and because, as the court said, by reason of the "in that" clause the count "failed to charge any offense at all." The significance of this decision in the instant case is the fact that the court pointed out that if the count had alleged only that the pretended officer "acted as

such" it would have been good. The court said:

"If the pleader had left out the final 'in that' clause, the count would sufficiently have stated an offense under the first clause of Sect. 76."

What the Government has done in drawing this indictment is to set out the complete offense defined in the first clause of the statute and then adding allegations showing commission of the offense defined in the second clause. Or otherwise stated, the Government has alleged that the appellant committed the first offense named in the statute, "that is to say" that he committed the second and separate offense which the statute forbids. We cannot agree that the use of the phrase "to-wit" merges into one two offenses which admittedly are separate and distinct.

In the case of United States v. Taylor (D.C.Mo.) 108 F. 621, decided in 1900 under a predecessor statute of the present one, the indictment was in a single count which charged that the defendant falsely represented himself to be an officer of the United States and did "act as such" *and* in such pretended character "did demand and receive" the sum of $10.00. The indictment which was held bad for duplicity was similar to that in the instant case except that the latter, in joining the two offenses, substitutes the word "to-wit" in the place of "and." We do not think that this rescues the indictment from invalidity. The statute defines two separate offenses and the defendant was entitled to know for which he was being prosecuted, not only that he might be prepared to defend the charge but for protection against a future prosecution for one or the other of the offenses.

The facts in the case, hereinafter to be recited, show that the Government's case rested on testimony that Leggett, by representing himself to be an agent of the Federal Bureau of Investigation, had obtained a registration card at a motel—an offense defined in the second clause of the statute. Yet the judgment entered in the case adjudges that the defendant is guilty of representing himself to be an officer of the F. B. I. and "acted as such"; with no mention of obtaining the registration card or anything else. The judgment recites conviction for one offense while the testimony shows commission of another; and a grave question arises as to whether the appellant cannot in the future be prosecuted for the second offense on which the judgment is now silent but which was the one shown by the testimony.

The evidence presented by the Government as to the alleged offense was embodied in the testimony of a Mr. Burros, who testified in substance as follows: That he (Burros) was the operator of a motel and restaurant known as the "Sea Oatel" located along the North Carolina coast. That on the night of September 20, 1961, the motel was not open for business because of a recent hurricane, and he and his wife had closed the office and lobby of the motel early and had retired to their living quarters which were above the office. About 9:30 Burros was aroused by the ringing of the door bell. He went to a door from which he looked down on a man standing on the ground outside the office and inquired what the latter wanted. The visitor stated that he represented the F. B. I. and wanted some information, whereupon Burros dressed, went down to the office and admitted the person who, after entering, stated that his name was Leggett and produced his credentials, which, the witness says, he glanced at and saw the name "Leggett" and two pictures. Leggett then said he wished to see the registration cards of certain persons who had stayed at the motel in the previous April. Burros then got out his file of previous registrations and a search through them began, participated in by Mrs. Burros who by then had come down to the office and been introduced to Leggett in his represented capacity.

One of the cards which Leggett had asked for was found in a short while and delivered to him and an unsuccessful search for another was continued for a

considerable time, during which Leggett a number of times referred to his connection with the F. B. I. and regaled Mr. and Mrs. Burros with accounts of his experiences and adventures.

Mrs. Burros was ill at the time of the trial and did not appear as a witness; so that the only testimony touching the alleged misrepresentation was that of Mr. Burros as set out above. The appellant had in fact for some years followed the occupation of private detective and had paid the tax and obtained the license required by law for the practice of that calling. As appears from the license he conducted his business under the name "Lawyers Investigation Service." The appellant did not testify at the trial but he presented a witness by the name of Bunting who testified that, by prearrangement with the appellant, he had been present at the motel on the night of the appellant's visit. This witness stated that when appellant approached the door to the motel office he (the witness) was seated in an automobile parked on the shoulder of the road in front of the motel, and that he was close enough to hear the conversation that took place when Burros, after being aroused, came to the balcony and talked to Leggett, who was on the ground. The witness said that a gentleman came out on the balcony, looked down and asked what appellant wanted and that the latter answered that he was "Mr. Leggett from Lawyers Investigation Service in Raleigh." That after a few further words the gentleman came down and let appellant into the lighted office. The witness could not hear any of the conversation within the office but through the glass door saw the movements in the office, including the arrival on the scene of Mrs. Burros and the production and search of the box of registration cards.

There was thus a direct conflict of evidence between Burros and the witness Bunting as to the capacity in which the appellant had represented himself to Burros. This conflict has a bearing upon the

second assignment of error advanced by the appellant and which arose in the following manner. A Mr. Miller, who was an agent of the F. B. I. stationed in that area, was offered as a witness by the Government and testified that a few days after appellant's visit to the motel he (Miller) happened to meet Burros with whom he was previously acquainted. The scene of the meeting was a restaurant run by Burros and where Miller and his wife had dropped in for dinner. In the course of conversation Burros remarked to Miller that he had recently had occasion to meet a "compatriot" of Miller's by the name of Leggett and told him of Leggett's call at the motel. Miller knew that there was no F. B. I. agent by name of Leggett assigned to that area, and a few days later started the investigation which finally resulted in the indictment of appellant.

Before Miller started to relate what had been told to him by Burros at their restaurant meeting the appellant objected on the ground that it would be hearsay. The objection was overruled. After the witness finished his statement as to what Burros had told him the court stated:

> "Gentlemen of the jury, this testimony is for the purpose of corroborating the witness Burros who was just on the witness stand, if you find that it does corroborate him."

At the conclusion of this witness' testimony the Court commented in similar words. Just what was intended by the words "if you find that it does corroborate him" is not clear to us, but we think the court was in error in telling the jury that Miller's testimony might be considered as corroborative of the testimony given by Burros. The only pertinent testimony given by Burros related to the happenings at the motel on the occasion of appellant's visit and it seems almost inevitable that the jury would have understood that it was this which the testimony of Miller was intended to corroborate.

■ The great weight of authority is to the effect that the testimony of a witness cannot be fortified or corroborated by showing that he has previously told the same story out of court. Otherwise a person might concoct an entirely false account of some happening and, after relating this account to a dozen of his neighbors, might call them in corroboration when at a later time he told the same untruthful story on the witness stand. There are numberless cases iterating this rule. In Dowdy v. United States (C.C.A. 4), 46 F.2d 417, 424, it is thus stated:

"* * * there can be no doubt that in modern times the general rule is that a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony."

In 58 Am.Jur. 457, it is noted that in the early days of the common law prior consistent statements were generally received and then it is said:

"But in time the courts in England and in this country took a more consistent and logical position in respect to this matter, and formulated certain conditions as a predicate for the admission of such prior consistent statements. To state the matter in another way, they announced a general rule that the testimony of a witness cannot be bolstered up or supported by showing that the witness has made statements out of court similar to and in harmony with his testimony on the witness stand, and established certain exceptions to that rule."

And on this subject see Ellicott v. Pearl, 10 Pet. 412, 439, 9 L.Ed. 475; United States v. Holmes, 26 Fed. Cases 349, 352 (Case No. 15,382); 22 C.J. 230; Wigmore on Evidence (2d Ed.) Sect. 1124; Note in 41 L.R.A.,N.S., 872–74, where numerous cases are cited; Goins v. United States (C.C.A.4), 99 F.2d 147, 150; Repass v. Richmond, 99 Va. 508, 515, 39 S.E. 160.

In United States v. Holmes supra **Mr.** Justice *Clifford* (*sitting on Circuit*) stated:

"No principle in the law of evidence is better settled than the one enumerated in the rule, that testimony in chief of any kind, tending merely to support the credit of the witness, is not to be heard except in reply to some matter previously given in evidence by the opposite party to impeach it."

As noted in the quotation from 58 Am. Jur. supra there are exceptions to the rule forbidding evidence of prior consistent statements. The exceptions arise where the credibility of the witness is impugned by the suggestion or contention that his story is one of recent fabrication or that it differs from accounts previously given by him or that he has a motive for testifying falsely. In such cases it is permissible to refute such imputations by proof that his previous statements concerning the event in question have been consistent with his testimony. See Dowdy v. United States (C.C.A.4), 46 F.2d at p. 424 for discussion of the rule and the exceptions to it.

■ The decisions following the established rule are in agreement in holding that proof of prior consistent statements is not admissible unless and until there has been some impeachment of the witness of the nature above referred to and that they cannot be shown as a part of the evidence in chief—as was done in the instant case. See lengthy note in 41 L.R.A.,N.S., 872 et seq. citing numerous cases. One of these which seems pertinent here is State v. Caddy, 15 S.D. 167, 87 N.W. 927, 91 Am.St.Rep. 666, which. holds:

"On a criminal trial it is not competent for the state, in making out a case in chief, to prove statements out of court of the prosecuting witness, consistent with his testimony identifying the accused as the criminal."

■ The general rule is also to the effect that mere contradiction of one wit-

ness by another is not such impeachment as permits proof of prior statements.

"The Courts, with few exceptions, are agreed that a witness who has merely been contradicted by witnesses on the other side, and who otherwise has not been impeached, may not be corroborated by proof of his previous consistent statements, however sharp the conflict of testimony." 58 Am.Jur. 461 and lengthy note in 140 A.L.R. 38 citing many cases from various jurisdictions.

Under this rule it would not have been permissible at any stage of this case to corroborate Burros by testimony as to his statement to agent Miller.

The general principle that the testimony of a witness who has not been impeached cannot be supported by proof of prior consistent statements appears to have found a diversity of reception in the North Carolina cases. Wigmore (2d Ed.) Sect. 1124, in setting forth the generally accepted rule cites in support of it the case of State v. Parish, 79 N.C. 610, 612, and quotes the following from the opinion in that case:

"It can scarcely be satisfactory to any mind to say that, if a witness testifies to a statement today under oath, it strengthens the statement to prove that he said the same thing yesterday when not under oath. * * * The idea that the mere repetition of a story gives it any force or proves its truth is contrary to common observation and experience that a falsehood may be repeated as often as the truth."

However, in Burnett v. Wilmington N. & N. Ry. Co., 120 N.C. 517, 26 S.E. 819 the court, without any recital of the facts, makes this unconditional statement:

"It is competent to corroborate a witness by showing that previously he had made the same statement as to the transaction as that given by

him on the trial." Citing a number of North Carolina cases.

■ It may have been these decisions which influenced the District Judge to rule as he did; but the competency of evidence in criminal trials in the Federal Courts is not controlled by state law. Rule 26 of the Federal Rules of Criminal Procedure provides,

"* * * The admissibility of evidence and the competency and privileges of witnesses shall be governed * * * by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

■ We think the admission of agent Miller's testimony for the purpose of corroborating Burros was contrary to settled authority and was error. In the Government's brief it is argued that at most it was harmless error. With this contention we cannot agree. There was a direct conflict in the testimony of the two witnesses, Burros and Bunting, as to the capacity in which the appellant represented himself and the court's statement that the testimony of Miller might be considered as corroborating Burros no doubt had weight with the jury in resolving this conflict.

■ Appellant also complains that he was prejudiced by certain parts of the judge's charge to the jury. As previously stated, the appellant's occupation was that of private detective and he had annually paid the tax and obtained the license required for such occupation, including one for the period June 1, 1961, to May 31, 1962. However, it appears that during its session in 1961 the North Carolina Legislature had enacted legislation designed to regulate more closely the occupation of private detective by requiring proof of character, the giving of a bond, etc. The Government contended, probably correctly, that all old licenses were voided by the 1961 legislation. At the time of his visit to the motel appellant had filed an application for license

under the new law but had not executed the required bond and no new license had been issued him. Government counsel made much of this fact, implying that appellant's presence on the motel premises was unlawful; and the court, in its charge to the jury, after elaborating to some extent on this phase of the evidence, concluded with these words:

"And so the Government says and contends that he wasn't even licensed as a special investigator and therefore had no authority to go there on the night in question, that is September 20, 1961, and seek entrance into the private residence of Mr. and Mrs. Archie Burros.

"And had no right therefore to seek information concerning the registration of any guests they had and that at the most he was a trespasser."

We think this language prejudicial and not warranted as applied to the issue before the jury. While what the court said was stated by it to represent the contention of the Government there was, by this very fact, an implication that whether appellant held a license as private detective was an issue in the case, or, at least, was material evidence bearing on the question of his guilt. Such was not the case. The only issue in the case was whether the appellant did or did not represent himself to be an F. B. I. agent, and it mattered not what his status was at the time. If he had been an invited and welcome guest it would have made no difference. "Trespass" signifies a transgression or wrongful act, Nolan v. New York N. H. & H. R. Co. 70 Conn. 159, 39 A. 115, 43 L.R.A. 305; and this is particularly true in the minds of laymen, unacquainted with the niceties of legal definitions. The facts of this case did not justify applying the term "trespasser" to the appellant and its use may well have led the jury to infer that the appellant committed a crime just by going to the motel. It certainly tended to divert them from the real and sole issue in the case.

Reversed and remanded.