Olene B. Ransom **ALLEN** et al.,
Appellants,

v.

Carlie **PEARSON** et al., Appellees.

No. 26091
Summary Calendar.

United States Court of Appeals
Fifth Circuit.

Sept. 8, 1969.

Fernand F. Willoz, III, Charles R. Maloney, New Orleans, La., for Johnnie M. Bigner.

Benjamin C. Toledano, Porteous, Toledano, Hainkel & Johnson, New Orleans, La., for defendants-appellees.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

On May 6, 1966, alone and in a pickup truck, the defendant-appellee, Pearson was driving North on U. S. Highway 11, near Slidell.

In a 1954 Cadillac, Mr. John L. Ransom was driving South. Riding with him were his sister, Miss Marie Ransom; his sons, John and James; and a guest, Robert W. Bigner, age nineteen.

In a collision between the two vehicles, the driver of the Cadillac, his sister, and young Bigner were killed. The sons were injured.

No suit was ever filed on account of the deceased Ransoms. Mr. Ransom's mother filed suit against Pearson and State Farm Insurance for the injuries sustained by her grandsons. Bigner's parents filed a separate suit for the wrongful death of their son. The suits were consolidated and thereafter went to trial before a jury. During the course of the trial State Farm was dismissed for lack of the necessary jurisdictional amount. The jury found that Pearson was guilty of no negli-gence. Judgment was entered in his favor. We affirm.[1]

The defense was that Pearson saw the oncoming Cadillac go out of control while trying to negotiate a curve, so he turned to his right onto the shoulder of the highway in an unsuccessful effort to avoid the collision. In other words, when struck, Pearson was not only on his side of the highway but had retreated to the shoulder on that side. The Ransoms say in their brief that the impact occurred on the shoulder of Pearson's side of the road "when the front part of defendant's truck struck the right side of the children's automobile". This indicates that the Ransom vehicle had spun entirely around in the highway and was headed North on the wrong side when the collision occurred. The finding that Pearson was guilty of no negligence carries the implication that Mr. Ransom's loss of control was the sole proximate cause of the collision. The factual finding is not attacked, but other trial errors are asserted.

These will be individually discussed.

First, it is said on behalf of the Bigners that the Court erred in the dismissal of State Farm as a party defendant. Mrs. Allen does not appeal on this point. It is stipulated that State Farm coverage was $10,000 per person. That is all that the Bigners could with reasonable certainty have expected to recover against State Farm, Carnes & Company v. Employers Liability Assurance Corp., 5 Cir., 1939, 101 F.2d 739; Payne v. State Farm Mutual Automobile Insurance Company, 5 Cir., 1959, 266 F.2d 63. The amount claimed had to be in excess of $10,000, exclusive of interest and costs, 28 U.S.C.A. § 1332(a). The Bigner parents say, however, that their claim for wrongful death and property damage (to the boy's clothing) should be aggregated to supply the jur-

---

1. Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804.

isdictional amount. The trouble with this contention, if it were otherwise valid, is that the complaint neither alleged nor sought damages for any property loss. The record reveals no motion or order to amend the pleadings to include such allegations or demands. We are, therefore, compelled to affirm the dismissal of State Farm. This result is not avoided by the fact that in the pre-trial on the Ransom case, which involved injuries to two persons, jurisdiction was stipulated. There was never any pre-trial of the Bigner case. Nor do we ignore the provisions of Rule 15(b) Federal Rules of Civil Procedure, applicable when issues not raised are tried by the express or implied consent of the parties. The record as designated by the parties on appeal does not reflect such a trial as to damage to clothing. We note also the contention of appellee that a claim for clothing damages could have been brought only by young Bigner's administrator or by his legally recognized heirs placed in possession of his property, citing Keith v. Royal Indemnity Company, 90 So.2d 534 (La., 1956). We do not need to reach this point.

The second assignment of error involves the use of prior depositions to impeach or contradict a witness who testified in court. Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that previously taken depositions may be used for the purpose of contradicting or impeaching the testimony of a deponent who later appears as a witness. Rule 26(d)(4) stipulates that if only a part of a deposition is offered in evidence an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other part.

About three weeks after the accident, while he was still in the hospital, James Ransom, then eight years old, in the presence of an attorney for the family, drew a diagram of the wreck. It was later attached to a deposition taken from James, who was ten years old when the case was tried. The deposition is not in the appellate record. The record is silent as to why the diagram had been attached to the deposition. No agreement to make the diagram a part of the deposition, as an appendix or exhibit thereto, is set forth.

While testifying at the trial James was permitted to draw a diagram of the wreck, which was admitted into evidence without objection. Subsequently, the defense offered in evidence the previously taken deposition. Counsel, however, first removed the diagram which had been drawn in the hospital. Counsel for the appellants strongly insisted that the diagram go in with the deposition. The Court heard argument in chambers and twice declined to admit the diagram which formerly had been attached to the deposition. He pointed out that the diagram drawn in court was essentially like the one drawn at the hospital.

It is obvious that the diagram was not a "part of the deposition", Rule 26(d)(4), unless the parties had agreed to make it so. It was drawn before the deposition was taken and at another time and place. No stipulation or agreement is made to appear. We must assume, therefore, that there was none. For all this record shows, counsel for the defendant may have attached the diagram to the deposition for his own convenience prior to the time he decided to submit the deposition. Appellants argue here that the diagram was necessary to an understanding of the deposition. This argument fails because a substantially similar diagram was already in evidence, without objection. Additionally, that diagram was made in open court, subject to any needed clarification.

There was no contention that the diagram drawn in open court was a "recent fabrication". The hospital diagram was worthless for impeachment purposes because it raised no differences in the document already admitted. Therefore, it could serve only to bolster the testimony of young James as given in court. Its exclusion on these grounds

was not error, 4 Wigmore on Evidence, § 1124; United States v. Leggett, 4 Cir., 1962, 312 F.2d 566.

The trial court, upon objection, declined to allow James Ransom, the plaintiff's only eyewitness, to use toy cars to illustrate his testimony. Counsel insists this is error in that the witnesses' verbal skills were not sufficient to communicate his views. However, this defect was largely cured by the fact that the boy was permitted to draw a diagram to represent his version of the accident. The denial was based on the ground that there was no schematic drawing of the roadway to orient the witness. A recent case on the use of models holds that their admission is proper over objection that the "road" was not in proportion, Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391, 397 (1967). It seems to us, in the context of this trial, in the absence of any showing that the witness could have shown by model what he couldn't show by diagram, the error, if any, could not have influenced the verdict and may be considered harmless.

Appellants next complain of the following episode in connection with the testimony of investigating officer Grass:

> "Q. [by defense counsel] Officer, was an account of the accident given to you by Mr. Pearson essentially, or did it conform to your physical examination and findings, which you made at the time of the accident?
>
> "MR. MALONEY:
>
> "I want to object to his asking for a conclusion of the witness, an expert conclusion"

The objection was overruled. The witness answered, "Yes, Sir".

As far as we can tell from the record before us, the defendant Pearson did not testify.

This evidence was obviously incompetent. The effect of it was to allow Pearson's version of the accident, via the officer, to be introduced in evidence without Pearson taking the witness stand and subjecting himself to cross examination. If counsel had objected on these grounds it would have been error to overrule the objection. Counsel, however, misdirected his objection. No element of expertness was required to know and to state, if such was not otherwise objected to, that Pearson's version coincided with what he found. We do not classify the denial of this objection to be plain error for this was a case in which such evidence as we have in this limited record almost conclusively supports the verdict of the jury. It is hard to see how the jury could have had any basis for a contrary result. It is, therefore, beyond ordinary conception that these evidentiary rulings could have affected the outcome.

Affirmed.