UNITED STATES of America, Plaintiff-Appellee,

v.

Marvin Leslie MATHIS, Jr., Defendant-Appellant.

No. 81–1203.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 18, 1981.

Decided Feb. 8, 1982.

Rehearing Denied March 9, 1982.

Certiorari Denied June 14, 1982. See 102 S.Ct. 2935.

James Blackmer, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., and Larry Gomez, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Catherine Baker Stetson, D'Angelo, McCarty & Vigil, Albuquerque, N. M. (Vince D'Angelo, D'Angelo, McCarty & Vigil, Albuquerque, N. M., with her on the brief), for defendant-appellant.

Before DOYLE, SEYMOUR and PECK *, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

### Preliminary Statement

The case which we now review involves the possession and sale of drugs, namely cocaine. There is a little dispute in the facts.

The differences arise in connection with questions of law. Primarily, that the defendant claims prejudice from alleged failure of the government to describe with adequacy the various charges that were in the indictment. The contention is that it was confusing to the defendant as to what he was charged with because there were three different parcels of cocaine which were not identified according to quantity; there was a one-quarter ounce sample which was delivered to the purchaser, the police officer, as a sample at around one o'clock; the connected sale of eight and three-quarter ounces or half-pound was delivered at five o'clock the same day; and nine to ten grams were found in defendant's boot and wallet when he was searched at the office of the Drug Enforcement Administration following his arrest incident to the sale of the one-half-pound of cocaine.

The other problem is that the defendant was dealing with an old friend who had become a confidential informant for the Drug Enforcement Administration whereby he claims entrapment. The jury returned a verdict of guilty on the sale of the one-half-pound so the issue of entrapment is resolved.

This sale had its origin in August, 1980 when a secret drug enforcement agent named Tim Cassias was visiting the defendant in the latter's home in El Paso, Texas. During this visit defendant Mathis told Cassias, according to the latter, that he had a friend named Joe in Albuquerque who wished to sell a half-pound of cocaine.

### The Evidence at Trial

Following this conversation Cassias contacted a special agent of the Drug Enforcement Administration and advised him of the availability of this cocaine. The special agent instructed Cassias to inquire if the defendant and his friend would deliver the cocaine to Lubbock or El Paso, Texas. Cassias was advised by the defendant that the only place where cocaine would be delivered was Albuquerque and it was finally agreed

* Honorable John W. Peck, of the Sixth Circuit,　sitting by designation.

that the delivery would be made there on August 23rd, 1980. Following this agreement defendant and Cassias proceeded to Albuquerque, New Mexico from El Paso, Texas in the automobile of Cassias. After arrival in Albuquerque, the defendant told Cassias he wanted to be dropped off at a special location so that he could meet with his connection and get a sample of the cocaine. Cassias was told to be back in an hour and a half. Cassias proceeded to make contact with the investigating officers and to advise them as to the activity that defendant had undertaken.

After this meeting with the officers, Cassias went to the location where he had dropped off the defendant and there met him. He was told by the defendant that he, Mathis, had seen the cocaine but had not picked up the sample. He was further informed that he would have to go up the Tijeris canyon, which was close by, to obtain it. Subsequently, the two men went up the canyon and made contact with a man in a white car, who proved to be the source. This car followed defendant and Cassias to the Tijeris post office. There defendant got out of the automobile and got into the white car, but before doing this the defendant advised Cassias to find something to do for approximately thirty minutes. After defendant left in the white car, Cassias called the investigative officers and explained what was transpiring.

A short time later the defendant returned to the post office in Tijeris Canyon and there advised Cassias that he had obtained the sample of cocaine. The two men then proceeded back to Albuquerque with the sample.

During the trip defendant and Cassias discussed the delivery of the cocaine and its quality. When they arrived in Albuquerque, they stopped at the Rodeway Inn Lounge where Cassias contacted his associates, the supposed buyers. Cassias went into the lounge and gave the sample to Detective Don Smith of the Albuquerque Police Department. Smith was told that defendant and his friends wanted to be paid prior to delivery. Smith replied that the transaction would have to be a mutual exchange. Cassias went out of the lounge and advised defendant of this. After that, the defendant and Cassias came back into the lounge and the defendant was introduced to Detective Smith. They talked about the price which was to be paid for the sample and the method of delivering the cocaine and finally reached agreement. The sale of the half-pound was to be effected by the defendant taking Cassias' automobile up the canyon and placing the cocaine in the automobile and then leaving the area. The agents were to come shortly thereafter and put the money in the automobile, pick up the cocaine and go their separate ways.

In accordance with the agreement, Detective Smith and Cassias went up the canyon and found the defendant near Cassias' automobile. They then talked about the cocaine and shortly thereafter defendant obtained the cocaine from a hiding place and delivered one-half-pound to the agents. Following the delivery defendant was arrested and taken to the Albuquerque Drug Enforcement Administration office to be fingerprinted. During the processing Detective Hearn searched the defendant and found relatively small amounts of cocaine in his boot and wallet (approximately 9 grams).

The main defense of Mathis was that he had been trapped into participating in the cocaine transaction by the confidential informant, Tim Cassias, his former friend.

Trial was to a jury and defendant, although convicted on Count III of the indictment, was found not guilty on the four other counts in the indictment.

Counts I and II described the earlier transaction, the transfer of the sample, which had occurred at about 1:00 p. m. on August 23rd. Count III, the one on which conviction was had, described the transaction at 5:00 p. m. which had to do with possession with intent to distribute the half-pound of cocaine alleged to have been purchased on that day at 5:00 p. m., just prior to the arrest. The time of the incidents were in the indictments, whereas the amounts were not set forth. Based on the

time alleged (about 1:00 p. m.) Counts I and II, which refer to possession with intent to distribute a quantity of cocaine, necessarily had to do with the sample which was transferred to Officer Smith. It appears that the important transaction in the case was Count III which alleged the possession with intent to distribute the one-half-pound of cocaine in exchange for $16,000 at approximately 5:00 p. m.

Count IV, which alleged distribution, is also timed at 5:00 p. m.

There was a pre-trial motion by the defendant to compel election, merger and consolidation. In the motion it was stated by Mathis that Counts I, II, III and IV were actually a single transaction. The government's statement was that "in response to paragraph 3 of defendant's motion, the plaintiff would state that the events described in Counts I and II and those in Counts III and IV involved two separate deliveries of a quantity of cocaine, Schedule II narcotic drug control substance, to undercover law enforcement officers." Prior to trial the government asserted that the cocaine involved in Count III was the same as that described in Count IV. In the government's brief, counsel say that "the thrust of defendant's argument is aimed at the quantity of cocaine involved in Count III". Mathis delivered approximately one-half-pound of cocaine to the government agents.

Following his arrest and arrival at Drug Enforcement Administration headquarters (DEA) the search of defendant uncovered nine more grams of cocaine concealed on Mathis' person.

The writer of the brief fails to take notice of the fact that Counts III and IV charged that at approximately *5:00 o'clock* the incident occurred. Five o'clock was when the sale was made to the agents by Mathis of one-half-pound of cocaine in exchange for $16,000. The nine grams of cocaine in Mathis' billfold and in his boot had been placed there earlier and were not part of the half-pound sale. This cocaine was discovered after the sale, in the office of DEA.[1]

As we view the case as a whole the all important act consisted of the sale of the one-half-pound of the cocaine at 5:00 p. m. The preliminary activities were antecedent to this sale and this not only should be but is the essence of Count III. Indeed, there is an inescapable impediment to including the boot and billfold cocaine in Count III. We refer to the fact that the evidence as to this was not presented to the Grand Jury. Also, the search occurred at another place and at another time. In addition there was not a transfer which evidenced intent to distribute in connection with the amounts which Mathis had secreted on his person. The intent to distribute was shown when the half-pound of cocaine was sold to the agents.

■ The position which this court must take, in view of the circumstances, is that the case must stand or fall on the possession and sale of the one-half-pound of the cocaine. We do not say that the sale of the sample and the possession of the remaining amount found on the person of defendant were independent transactions. On the contrary each is part of the sale of the half-pound. It is unquestionably one criminal enterprise.

The questions to be considered are:

1. Sufficiency of the allegations in the indictment.

    a. Does it notify the defendant of the contents of the charge—including the subject matter?

2. Did the subject matter constitute cocaine which was found on the person of the accused or the one-half-pound which was purportedly sold to the drug agents for $16,000?

3. Was the cocaine which was found on defendant's person admissible in evidence even though it is not part of Count III and could not be?

1. One gram was found in the Mathis billfold and eight or nine grams were discovered in his boot when the drug officers searched him after they arrested him.

## I.

Count III in its entirety reads as follows:

### COUNT III

On or about the 23rd day of August, 1980, at approximately 5:00 p. m., in the State and District of New Mexico, the defendant, MARVIN LESLIE MATHIS, JR., unlawfully, knowingly and intentionally did possess with intent to distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance.

In violation of 21 U.S.A. 841(a)(1).

Counts I and II are drafted similarly to Count III. The only difference is that the time is not the same. Count III alleged that on the 23rd of August at approximately 5:00 p. m. and then proceeds to describe the offense. Counts I and II differ in that the time in each of those is 1:00 p. m. Count III, the sale of the one-half-pound of cocaine, is the nucleus of the entire transaction. Counts I and II purport to describe the 1:00 o'clock occurrence and the only activity at that time was the transfer of the sample which had been furnished by Mathis and which was turned over to Officer Smith. It was contemplated the sum of $500 should be paid for that but, as it happened, the arrest occurred before the $500 could be turned over.

The reasons that Count III plainly pertains to the half-pound sale is not only because it occurred at the time it did but because it was the central happening which justified Count III, but also it was at that very time that Mathis, Officer Smith and Cassias had gone up to the canyon for the purpose of getting the cocaine and completing the transaction. Previously Mathis and Cassias had delivered the sample in Albuquerque. After Mathis had received the entire amount, including the sample and that which was in his boot and his billfold as well, he had stashed it near the post office and had taken the small amount, which was the sample, to Smith in company with Cassias.

The sale of the half-pound of cocaine was the culmination of all of the prior happenings, the journey from El Paso, the contact with the seller and buyers, the obtaining of the cocaine and the attempted transfer to Officer Smith in exchange for the $16,000 purchase price. It was this quantity that brought the parties together in the canyon for the purpose of completing the sale. In other words, the sale climaxed all of the discussions and all the other activity. When it was completed, the entire case was completed and so it was not difficult for the defendant to comprehend and it is scarcely surprising that the jury found the defendant guilty on that charge and not guilty on the others, the satellite charges which were improperly brought in the first place. The evidence is clear then that the sale of the half-pound was the charge contained in Count III. It was not only possession, it was a sale which proved the alleged intent to distribute. The sale of the sample previously at 1:00 o'clock, which is described in Counts I and II, cannot be said to have been completed in the same way because payment was not made. So Count III, which describes possession with an intent to distribute at 5:00 p. m., describes to the extent necessary the half-pound transaction and that only.

We do not say that it is the best indictment that was ever drawn. It could and should have been more explicit. It ought to have been limited to the cocaine which was sold and described in Count III. That would have caused it to be conclusive.

Not only is the third count the important one, indeed it is the only one, if the transaction constitutes a single interrelated criminal enterprise. It does and is different from the type of case in which there are several independent acts.

The Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 300, 52 S.Ct. 180, 181, 76 L.Ed. 306 made this distinction extremely well. The indictment in that case specifically described several different acts. The convictions based upon the indictment which had separately charged the various sales of drugs was upheld. The Supreme Court said in that case:

the statute is not aimed at sales of the forbidden drugs *qua* sales, a matter entirely beyond the authority of Congress, but at sales of such drugs in violation of the requirements set forth in §§ 1 and 2, enacted as aids to the enforcement of the stamp tax imposed by the act.   * * * Each of the offenses created requires proof of a different element.  The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses, or only one, is whether each provision requires proof of a fact which the other does not.  *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489.[2]

Id. 304, 52 S.Ct. at 182.

The Sixth Circuit considered this general problem in *United States v. Reed*, 647 F.2d 678 (1981).  There the offense was held to have been a continuing course of illegal conduct, receiving and concealing stolen goods.  It was ruled that the two offenses involved should have been merged and that only one sentence could have been imposed; the consecutive sentences which had been ordered against each defendant on Counts I and II had to be vacated.  It is noted in the opinion that the statute was ambiguous as to the appropriate unit of prosecution.  The court pointed out that the important test was whether there existed a single course of criminal conduct and then whether there was a different element in each count as there was in *Blockburger*.  *United States v. Reed* cites *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), wherein the Supreme Court reversed the decision of the Sixth Circuit and held that an individual transporting two women across state lines for immoral purposes could be found guilty of only one single act of transportation in violation of the Mann Act.  In so ruling the court examined the statutory language in its entirety, and articulated the following rule of statutory construction which guides us here:

When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit.  When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity * * *.  It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment * * *.  [I]f Congress does not fix the punishment for a criminal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.

In *Castle v. United States*, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961) the petitioner had been convicted on five separate counts of violating 18 U.S.C. § 2314, which statute prohibits the interstate transportation of forged or altered securities.  The petitioner transported five forged money orders across state lines at the same time.  Relying upon *Bell* and the rule of lenity for construing ambiguous statutes, the Court found that petitioner could be convicted of only one offense even though he had transported the five separate forged securities.

The Sixth Circuit, in *United States v. Woods*, 568 F.2d 509 (6th Cir. 1978), rendered a decision in a narcotics case which is quite similar to this case.  It involved heroin which had been divied into several packages.  The charge was possession with intent to distribute.  Count I alleged that there had been possession of 111.36 grams of heroin in violation of 21 U.S.C. § 841(a)(1).

Count II charged that Woods, Schnell and Snyder unlawfully distributed and aided and abetted each other in the distribution of 111.36 grams of heroin, in violation of 21

---

**2.**  At p. 302 the author quotes Wharton's Criminal Law, 11th Ed., Sec. 34:

The test is whether the individual acts are prohibited, or the course of actions which they constitute.  If the former, then each act is punishable separately * * *.  If the latter, there can be but one penalty.

U.S.C. § 841(a)(1). Counts III and IV charged unlawful possession with intent to distribute 115.37 grams of heroin in Count III and 95.34 grams of heroin in Count IV. The 111.36 grams of heroin, described in Count I of the indictment, was sold by Schnell, a confederate of Woods, to the undercover government agents and was thus the same heroin described in Count II. The heroin described in Count III of the indictment corresponded in weight to the two parcels found in the front seat of the car weighing 114.55 grams and 107.26 grams, respectively. There were two caches of heroin discovered in the trunk of the Opel car which weighed 28.527 and 54.97 grams, respectively, or a total of approximately 86 grams, which approximated the weight of the heroin described in Count IV. Woods was convicted of all four counts and sentenced to seven years plus a special parole term of three years on each of the four counts, the sentences to run concurrently. As in the case at bar, Woods moved the court to compel prosecution to elect between Counts I and II.

On appeal Woods contended that there was error in denying his motion. The Sixth Circuit observed that the statute did not graduate the gravity of the crime of possession of heroin based on the quantity possessed and thus it saw no indication that Congress intended to permit a multiplication of the offenses of possession at any given time by defendant upon evidence of the quantity of the heroin, they merely may have been separately packaged or stashed. The reasoning of the *Woods* decision was that the quantity was of no consequence. It was the question of possession that mattered and that the additional amounts which were separately packaged were admissible for the purpose of proving the possession and for that purpose only.

The convictions of Counts I and II and the sentence for Count II was affirmed. The case was remanded to the district court with instructions to vacate the sentence under Count I and the convictions and sentences under Counts III and IV.

The *Woods* case and our case are similar in that both deal with a single course of criminal conduct and an effort to compound sentences. Thus, if here there had been convictions on Counts I and II and III and IV, some of those repetitious convictions would now have to be vacated due to the failure of the trial court to recognize that this was one criminal transaction which could not be treated as several distinct criminal transactions.

But in our case the multiplicity of counts problem has been remedied by the jury. It determined that Counts I, II, III and IV should be nullified. They found the defendant not guilty of these and thus, the jury, in effect at least, treated it as one transaction. It found the defendant guilty under Count III, which was the core of the case. In our judgment, then, and in accordance with the reasoning in *United States v. Woods* and *United States v. Reed, supra,* we conclude that the conviction in Count III charging possession with intent to distribute fully identified the transaction and is entitled to stand. The evidence fully supports it and the cocaine described in Counts I and II as well as in Count IV were part and parcel of the single transaction, which was contained in Count III.

## II.

The final point concerns the legal consequences which flow from the cocaine which was present on the defendant's person, amounting to roughly 9 grams. At trial the government's theory of the case was as we have stated it, that is the defendant was guilty of violating the allegations set forth in Count III. Thus, they recognized that this was the crux of the case. However, following the conviction, the trial court asked for briefs on the cocaine found in the search. The government argued that the cocaine which was found on the defendant's person after his arrest and after he was taken to headquarters, was actually the cocaine that was set forth in Count III. Thus, they shifted their position. This was a gross mistake because the cocaine which was found on defendant's person was never

described to the Grand Jury. Moreover, no allegation in the indictment purported to charge this possession. However, under the theory that we have outlined above, that of a single continuous criminal enterprise, it was unnecessary for the government to indulge in such an expedient action as this. This was after the case had been argued to the jury and the verdicts had come in. In any event this court is not bound by this action which was taken by the government. That this was one continuous criminal enterprise is apparent from the fact that it was planned in El Paso, Texas, and the defendant journeyed to Albuquerque, New Mexico for the purpose of obtaining from the defendant's source a quantity of cocaine to sell. This was one single criminal transaction and thus, the charges other than Count III were surplusage. All the government needed to do was to allege the possession with intent to distribute as is set forth in Count III. True, it should have detailed the transaction to a greater extent. Defendant not only argued that the cocaine which was discovered on his person could not be the basis for Count III, he also contended that it could not qualify as a charged offense since it was not presented to the Grand Jury. As we view the case, the three quantities are in no way separate but are tied together as parts of one enterprise.

The quantities found in the search were not charged in the indictment. Therefore, it was not necessary that there be a presentation to the Grand Jury of this part of the whole. It was not a separate nor a similar offense and it was cogent evidence to prove the possession requirement in Count III. It also was relevant in that it showed that the defendant was not as innocent as he contended in seeking to establish an entrapment theory.

In *United States v. Woods, supra,* the Sixth Circuit ruled that division of the drug into several packages did not form a basis for treating each package as a separate crime since quantity does not increase the gravity of the crime. The court said:

However, as long as the statute does not graduate the gravity of the crime of possession of heroin by the quantity possessed, we see no indication that Congress intended to permit a multiplication of the offenses of possession at any given time by a defendant upon evidence that the heroin may merely have been separately packaged or stashed.

In any event the defendant did not make an objection to the admission of this search evidence and it is not of such great moment in any event to justify invoking the doctrine of plain error. In the face of all of the cocaine that the defendant was dealing in, the presence of some retained on his person could not cause prejudice and does not justify use of either the similar or other offense doctrine nor does it justify condemnation because it was not presented to the Grand Jury. Finally, the jury acted very wisely in this matter; it treated it as one continuing criminal enterprise and its disposition of Counts I, II, IV and V was entirely proper.

The judgment of the district court is affirmed.