UNITED STATES of America,
Plaintiff-Appellee,

v.

Brett C. KIMBERLIN,
Defendant-Appellant.

No. 85–1190.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1985.
Decided Dec. 30, 1985.

**1248**

Donald V. Morano, Chicago, Ill., for defendant-appellant.

Robert C. Perry, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

On October 8th, 1980, a jury convicted defendant-appellant Brett Kimberlin of eight counts in a thirty-four count indictment. Four counts of the eight on which the jury convicted defendant charged that defendant had unlawfully possessed a Department of Defense insignia, in violation of 18 U.S.C. § 701 (1976). The other four counts on which the jury convicted defendant charged that defendant had falsely impersonated a Department of Defense police officer, in violation of 18 U.S.C. § 912 (1976). The district court sentenced defendant to consecutive three-year sentences on the section 912 offenses, and to concurrent six-month terms on the section 701 counts. Defendant appealed his convictions and sentences on the section 701 and section 912 counts to this court. This court

affirmed the convictions and sentences in an unpublished order. *United States v. Kimberlin*, 673 F.2d 1335 (7th Cir.1981). Defendant then filed Rule 35 and section 2255 motions in the district court, requesting reduction or vacation of his sentences. The district court summarily denied these motions on March 19, 1981. Defendant subsequently filed a motion to reconsider the previous denial of his post-trial motions in the district court, which the district court likewise denied. Defendant appealed the denial of his motion to reconsider to this court, and this court dismissed defendant's appeal. *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982). Defendant then filed a second Rule 35 motion in the district court, which the district court denied. The district court's denial of this second Rule 35 motion forms the basis of the present appeal.

## I. THE FACTS AND PROCEEDINGS BELOW

On February 28, 1979, a federal grand jury indicted defendant on thirty-four counts stemming from a series of bombings in Speedway, Indiana. Counts 1 through 16 of the indictment charged that defendant illegally possessed and manufactured firearms in connection with the bombings; Counts 17 through 22 charged that defendant maliciously caused damage by means of explosives; Counts 23 and 24 charged that defendant, a convicted felon, possessed explosives; and, Count 25 charged that defendant illegally transported ammunition in interstate commerce. Counts 26 through 30 of the indictment charged that defendant unlawfully possessed an official insignia of the Department of Defense and a Presidential seal, and Counts 31 through 34 charged that defendant falsely impersonated a Department of Defense official. The case proceeded to trial on all thirty-four counts, but the jury was unable to reach a unanimous verdict on Counts 1 through 25. The jury did vote to acquit defendant on Count 30, however, and voted to convict defendant on Counts 26 through 29 and Counts 31 through 34. After declaring a mistrial on

Counts 1 through 24, the district court sentenced defendant to consecutive three-year sentences on Counts 31 through 34 and to concurrent six-month sentences on Counts 26 through 29.

Prior to a second trial on Counts 1 through 24, the district court granted defendant's motion to sever Counts 23 and 24 from the remaining counts. These counts were then the basis of a trial upon which the defendant was convicted. The district court entered a judgment of conviction on the two counts, which this court affirmed. *United States v. Kimberlin*, 692 F.2d 760 (7th Cir.1982).

The district court then conducted a third trial, on Counts 1 through 22. At this trial, the jury voted to convict defendant on each count. The district court then entered a judgment of conviction and imposed sentence on the counts. Defendant's appeal from that judgment is presently pending in this court. *United States v. Kimberlin*, No. 82–1025.

The appeal before this court in the present case concerns Counts 26 through 29 and Counts 31 through 34. As we have noted, the district court imposed consecutive three-year sentences on the latter four counts and concurrent six-months terms on the former. Defendant appealed his convictions and sentences on these counts to this court. We affirmed the convictions and sentences in an unpublished order. *United States v. Kimberlin*, 673 F.2d 1335 (7th Cir.1981). Defendant then sought Rule 35 and section 2255 relief in the district court, with no success. The district court likewise denied a subsequent motion to reconsider its previous denial of post-trial relief, and we affirmed the district court's decision. *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982). Defendant subsequently filed a second motion for Rule 35 relief, raising numerous double jeopardy challenges to the format of the indictment as well as claims that his consecutive three-year sentences constituted cruel and unusual punishment and claims that the judge who initially denied post-trial relief was unconstitutionally biased.

The district court denied defendant's second Rule 35 motion on January 23, 1985. Defendant presently appeals that denial of relief to this court, raising challenges identical to the challenges he presented in the court below. We discuss each of defendant's challenges in turn.

## II. DUPLICITOUS COUNTS

First, defendant contends that the district court illegally imposed consecutive sentences upon him under Counts 31 through 34 of the indictment because Counts 31 through 34 were duplicitous. Specifically, defendant maintains that Counts 31 through 34 of the indictment each charged that defendant committed two offenses defined by 18 U.S.C. § 912, the false personation statute. 18 U.S.C. § 912 (1976). Counts 31 through 34 charged that defendant, on various dates in September, 1978, pretended to be a Department of Defense police officer and ordered, or attempted to receive, rubber stamps, security badges, hat shields, drivers license forms and drivers license plates from certain individuals, all in violation of section 912. 18 U.S.C. § 912 (1976). Counts 31 through 34 closely tracked the language of section 912, by stating, in pertinent part:

> On or about [a certain date], in the Southern District of Indiana, BRETT C. KIMBERLIN, did *falsely pretend and assume to be an officer and employee of the United States, and acting under the authority thereof,* that is, a security police officer of the United States Department of Defense, and did falsely *take upon himself to act as such,* in that while wearing a uniform with a United States Department of Defense sleeve patch, he *ordered,* or attempted to receive, [from a certain individual certain items of property].

18 U.S.C. § 912 (1976) (language equivalent to statutory language italicized). Defendant asserts that the duplicity of Counts 31 through 34 stems from the Government's failure to elect to charge either the offense set forth in the first part of section 912, namely impersonating a federal official and

"acting as such," or the offense set forth in the second part of section 912, namely impersonating a federal official and "in such pretended character demand[ing] or obtain[ing] [a] ... thing of value." 18 U.S.C. § 912 (1976).

Several cases, including at least one from this circuit, acknowledge that the false personation statute, now codified as section 912, creates two separate offenses.[1] *United States v. Barnow*, 239 U.S. 74, 75, 36 S.Ct. 19, 20, 60 L.Ed. 155 (1915) (decided under the predecessor to 18 U.S.C. § 912); *United States v. Fierson*, 419 F.2d 1020, 1021 n. 1 (7th Cir.1969); *United States v. Wilkes*, 732 F.2d 1154, 1156 n. 2 (3d Cir. 1984); *United States v. Robbins*, 613 F.2d 688, 690 (8th Cir.1979). These offenses are: 1) the false impersonation of a federal official coupled with an overt act in conformity with the pretense (offense 1); and, 2) the false impersonation of a federal official coupled with the demanding or obtaining of an item of value (offense 2). *See United States v. Rosser*, 528 F.2d 652, 654 n. 4 (D.C.Cir.1976); *United States v. Mitman*, 459 F.2d 451, 453 (9th Cir.1972), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111; *United States v. Leggett*, 312 F.2d 566, 568–69 (4th Cir.1962). Counts 31 through 34 of the indictment returned against defendant charged both of these offenses because each of these counts contained allegations that defendant impersonated a Department of Defense police officer and acted as such, and allegations that defendant, in such pretended character, ordered or attempted to receive an item of value. Thus, we conclude that the counts were duplicitous, at least in a technical sense.

Our conclusion that the counts were duplicitous, however, does not inalterably require the further conclusion that the sentences imposed upon these counts must be eradicated. To the contrary, we must examine the record to determine whether the duplicity of Counts 31 through 34 resulted in harmless or plain error to defendant. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We note, initially, that the ban against duplicitous indictments derives from four concerns. First, courts condemn duplicitous indictments which fail to give defendants adequate notice of the nature of the charges against which they must prepare a defense. *See United States v. Berardi*, 675 F.2d 894, 899 (7th Cir.1982). Second, courts denounce duplicitous counts which threaten to subject defendants to prejudicial evidentiary rulings at trial. *See United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir.1978); *United States v. Alsobrook*, 620 F.2d 139, 143 (6th Cir.1980), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51. Third, courts dismiss duplicitous indictments which produce trial records inadequate to allow defendants to plead prior convictions or acquittals as a bar to subsequent prosecution for the same offense. *See United States v. Berardi*, 675 F.2d at 899; *United States v. Zeidman*, 540 F.2d 314, 316–17 (7th Cir.1976). Finally, courts overturn duplicitous indictments which present a risk that the jury may have convicted a defendant by a nonunanimous verdict. *See United States v. Bins*, 331 F.2d 390, 393 (5th Cir.1964) (dismissing a duplicitous indictment because the jury may not have agreed unanimously that defendant committed at least one of the offenses charged in the indictment), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87.

In the case before us, none of these four concerns exists. We note that Counts 31 through 34 gave defendant adequate notice of exactly what acts, on what dates, the Government would rely on in proving its case. Although defendant did request a bill of particulars with respect to Counts 31 through 34, defendant's request did not

---

1. Indeed, some cases imply that the false personation statute creates three separate offenses, based on a defendant's impersonation and acting as such, his impersonation and demanding an item of value, or his impersonation and obtaining an item of value. *See, e.g., Ekberg v. United States*, 167 F.2d 380, 386 (1st Cir.1948); *Elliott v. Hudspeth*, 110 F.2d 389, 390 (10th Cir.1940).

indicate that defendant was confused as to whether the Government would proceed against him under offense 1 of section 912 or offense 2. Moreover, the record does not suggest that the inclusion of offense 1 and offense 2 in Counts 31 through 34 subjected defendant to prejudicial evidentiary rulings at trial. The record reveals that the Government proceeded against defendant under offense 2 and accordingly provides adequate protection against further prosecution of defendant for the same offense. Finally, there is no risk in this case that some members of the jury voted to convict defendant on Counts 31 through 34 based on conduct violating offense 1, while others voted to convict based on acts violating offense 2. *Compare United States v. Bins,* 331 F.2d at 393. We observe that the district court's instructions to the jury clearly limited the jury's inquiry to the elements constituting a violation of offense 2. The cases acknowledge that such limiting instructions guard against the possibility of conviction by a nonunanimous verdict. *E.g., United States v. McGuire,* 744 F.2d 1197, 1202 (6th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); *United States v. Bins,* 331 F.2d at 313.

Although it is not necessarily determinative of the present issue, the case at bar is factually distinguishable from *United States v. Leggett,* 312 F.2d 566 (4th Cir.1962), in which the court found that a single count indictment alleging both types of § 912 offenses was duplicitous and reversible error. As contrasted with the facts in this case, the defendant in *Leggett* objected to the indictment before arraignment, while Kimberlin failed to raise an objection to his indictment until after his conviction was affirmed by this court. The trial court denied Leggett's motion to dismiss the indictment, he went to trial and was ultimately convicted. The Court of Appeals reversed the conviction stating:

"The facts in the case, hereinafter to be recited, show that the Government's case rested on testimony that Leggett, by representing himself to be an agent of the Federal Bureau of Investigation, had obtained a registration card at a motel—an offense defined in the second clause of the statute. Yet the judgment entered in the case adjudges that the defendant is guilty of representing himself to be an officer of the F.B.I. and 'acted as such'; with no mention of obtaining the registration card or anything else. The judgment recites conviction for one offense while the testimony shows commission of another; and a grave question arises as to whether the appellant cannot in the future be prosecuted for the second offense on which the judgment is now silent but which was the one shown by the testimony."

*Leggett,* 312 F.2d at 570. As outlined above and in contrast to *Leggett* none of this confusion between the two types of offenses under § 912 was present in Kimberlin's trial, as the record reveals that the government proceeded against Kimberlin under offense 2 and he was convicted under offense 2. In addition, the district court's jury instructions clearly limited the jury's inquiry to the elements constituting a violation of offense two. Therefore, although the counts complained of were technically duplicitous, the record clearly establishes that Kimberlin was convicted of offense 2 *under* § 912.

Further, while recognizing the well established authority previously cited on there being two separate offenses, we do observe that the duplicity here is of a technical semantic nature. We have difficulty in seeing how an impersonator can demand or obtain (offense 2) without simultaneously acting (offense 1).

Under the circumstances of this case, we accordingly find that any error resulting from the duplicity of Counts 31 through 34 was harmless. Furthermore, we reaffirm our observation in *Collins v. Markley,* 346 F.2d 230, 231 (7th Cir.1965) (en banc), that the sufficiency of an indictment should be determined by practical rather than technical considerations.

We hesitate to construe the indictment in this case in a hypertechnical manner partic-

ularly because defendant first challenged its duplicity after his conviction *and* after his direct appeal to this court.[2] *See Hagner v. United States,* 285 U.S. 427, 433, 52 S.Ct. 417, 419, 76 L.Ed.2d 861 (1932) (setting forth a practical, lenient standard for a defendant's post-conviction challenge to an indictment). *Accord United States v. Willis,* 515 F.2d 798, 799 (7th Cir.1975); *United States v. Mitman,* 459 F.2d at 453. A practical analysis of the record in this case leads us to conclude, as we have indicated, that defendant suffered no plain error from the duplicity of Counts 31 through 34. This duplicity therefore provides insufficient grounds to overturn defendant's sentence.

### III. MULTIPLICITOUS COUNTS

Defendant presents a related challenge to Counts 26 through 29 of the indictment and to Counts 33 and 34. Specifically, defendant contends that Counts 26 through 29 of the indictment, as well as Counts 33 and 34, were multiplicitous because they charged two offenses in six counts. Defendant contends that his convictions and sentences on each of these counts violated the Fifth Amendment's guarantee against double jeopardy because they subjected him to multiple punishment for the same offense. *See Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Brown,* 521 F.Supp. 511 (W.D.Wis.1981). We shall treat each of defendant's multiplicity arguments in turn.

1. Counts 26 through 29

Defendant contends that Counts 26 through 29 of the indictment were multiplicitous because they charged the commission of a single offense, namely possession of a Department of Defense patch, in four separate counts. The jury convicted defendant on each of the four possession counts and the district court imposed the

statutory maximum sentence of six months' imprisonment on each count. The district court ordered these sentences to run concurrently with the consecutive three year sentences imposed on Counts 31 through 34.

Count 26 of the indictment charged that defendant knowingly possessed a Department of Defense shoulder patch on or about September 15, 1978. Counts 27 and 28 charged that defendant committed the same offense on two separate occasions on or about September 18, 1978, and Count 29 charged that defendant possessed the Department of Defense patch on or about September 20, 1978. Counts 26 through 29 directly corresponded to the impersonation offenses charged in Counts 31 through 34 of the indictment, which described four different occasions, two occurring on September 18, 1978, on which defendant falsely impersonated a Department of Defense police officer.

Defendant asserts that his continuous possession of the same Department of Defense patch from September 15, 1978 until September 20, 1978 constituted one, not four, offenses. The Government, on the other hand, maintains that each occasion on which defendant possessed and displayed the patch constituted a separate offense.

In determining whether Counts 26 through 29 charged a single offense, and were multiplicitous, we must first identify what unit of prosecution Congress intended to set forth in 18 U.S.C. § 701, the statute under which defendant was convicted. *See Ladner v. United States,* 358 U.S. 169, 173, 79 S.Ct. 209, 211, 3 L.Ed.2d 199 (1958); *Bell v. United States,* 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–22, 99 L.Ed. 905 (1955); *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). As the Supreme Court observed in *Sanabria v. United States,* 437 U.S. at 69–70, 98 S.Ct. at 2181:

---

**2.** The Government, for some reason, waited until oral argument to contend that defendant had waived his duplicity challenge by failing to raise it before this time. Under these circumstances, we find that the Government waived its "waiv-

er" defense, *see United States v. Angelos,* 763 F.2d 859, 861 (7th Cir.1985), and we therefore base our decision on defendant's duplicity challenge on alternative grounds.

It is Congress and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. But once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this Congressional choice.

(citations omitted).

In discerning the proper unit of prosecution under section 701, we must first examine the language of the statute itself. *See Albernaz v. United States,* 450 U.S. 333, 336, 101 S.Ct. 1137, 1140, 67 L.Ed.2d 275 (1981); *United States v. Kinsley,* 518 F.2d 665, 668 (8th Cir.1975). Section 701 states:

Whoever manufactures, sells, or *possesses* any badge ... or other insignia, of the design prescribed by the head of any ... agency of the United States ..., or photographs, prints, or ... makes ... any ... impression in the likeness of such badge ... or other insignia ... shall be fined not more than $250 or imprisoned not more than six months, or both.

18 U.S.C. § 701 (1976) (emphasis added). This language, unfortunately, does not indicate unambiguously whether Congress intended under section 701 to create a separate offense for each occasion on which a defendant possesses an official badge or to punish a course of conduct characterized by a defendant's possession of an offical badge during a certain period of time. *Cf. United States v. Jones,* 533 F.2d 1387, 1390 (6th Cir.1976). *See also United States v. Kinsley,* 518 F.2d at 668–69 (finding statute prohibiting possession of firearms by convicted felon ambiguous as to question whether simultaneous possession or more than one firearm constituted one offense). *Cf. United States v. Calhoun,* 510 F.2d

861, 869 (7th Cir.1975), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104; *McFarland v. Pickett,* 469 F.2d 1277, 1279 (7th Cir.1972) (per curiam). *Compare United States v. Oxford Royal Mushroom Products, Inc.,* 487 F.Supp. 852, 856 (E.D. Pa.1980) (construing statute in which Congress unambiguously set forth a penalty for each day a defendant discharged pollutants).

Under these circumstances, our next step is to examine the legislative history to section 701 for any indication as to whether Congress intended section 701 to punish each occasion of unauthorized possession or a continuing course of conduct.[3] *See Heflin v. United States,* 358 U.S. 415, 419, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959); *Ladner v. United States,* 358 U.S. at 174–75, 79 S.Ct. at 212. Unfortunately, the legislative history to this section is scant, and our review of the legislative history that is available provides no resolution to the question before us.

The cases instruct us that these circumstances call into play a rule of lenity. *See Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); *United States v. Valentine,* 706 F.2d 282, 292 (10th Cir.1983); *United States v. Reed,* 647 F.2d 678, 684 (6th Cir.1981), *cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118. The Supreme Court enunciated this rule of lenity in *Bell v. United States,* 349 U.S. at 83–84, 75 S.Ct. at 622, where the Court explained:

When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sym-

---

**3.** We note that many cases construe possession, by its nature, as a continuing course of conduct. *See, e.g., United States v. Mathis,* 673 F.2d 289 (10th Cir.1982), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334; *United States v. Jones,* 533 F.2d 1387, 1391 (6th Cir.1976); *Harrell v. Israel,* 478 F.Supp. 752, 756 (E.D.Wis. 1979).

pathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wish implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses....

■ Because the language and legislative history of section 701 do not reveal unambiguously that Congress intended to make each occasion on which a defendant possesses an official badge a separate offense, we apply the rule of lenity to the facts of this case. Applying the rule of lenity, we conclude that defendant's possession of one patch during a five day period in September, 1978, as described in Counts 26 through 29, constituted one continuous offense or course of conduct.[4] *Cf. United States v. Jones*, 533 F.2d at 1390 (treating defendant's possession of a firearm on three occasions during a three-year period as a continuous offense).

As we have indicated, the jury convicted defendant on each of the four section 701 counts, and the district court imposed concurrent sentences on these counts of six months' imprisonment, the statutory maximum. Because these counts constituted one offense, multiple convictions and sentences on these counts subjected defendant to double jeopardy, and defendant's multiple punishment on the counts was illegal. The proper remedy, under these circumstances, is to vacate three of defendant's

convictions and concurrent sentences on the section 701 counts. *See Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985). *See also Wright v. United States,* 519 F.2d 13, 17 (7th Cir. 1975), *cert. denied,* 423 U.S. 932, 96 S.Ct. 285, 46 L.Ed.2d 262. This court accordingly instructs the district court to vacate three of defendant's four section 701 convictions and sentences on remand.

### 2. Counts 33 and 34

We take a different view, however, of defendant's multiplicity challenge to Counts 33 and 34.[5] Count 33 charged that defendant falsely stated to John Dottenwhy, on September 18, 1978, that he was a Department of Defense official and ordered military drivers license plates and drivers license forms. Count 34 charged that defendant repeated the pretense on September 20, 1978, when he unsuccessfully attempted to receive the same items. Both counts alleged violations of 18 U.S.C. § 912 (1976). Section 912 states, in pertinent part:

> Whoever falsely assumes or pretends to be an officer ... of the United States ... and ... in such pretended character demands or obtains any ... thing of value, shall be fined not more than $1000 or imprisoned not more than three years, or both.

18 U.S.C. § 912 (1976).

■ This language, in our opinion, unambiguously prohibits a defendant from demanding an item of value while impersonating a United States official, and thus fails to trigger the rule of lenity. The evidence in this case indicated that defendant ordered items of value from John Dottenwhy on one occasion, while pretending to be a Department of Defense police officer, and then returned two days later. On the second occasion, defendant repeated the pretense and attempted to receive the same

---

**4.** Our conclusion might differ if defendant possessed two different patches in two different places, *see United States v. Blakeney,* 753 F.2d 152 (D.C.Cir.1985), or acquired two different

patches at the same time. *See United States v. Privett,* 443 F.2d 528 (9th Cir.1971).

**5.** Defendant did not challenge Counts 31 and 32 on the basis of multiplicity.

items. These acts, we conclude, constituted two separate "demands" under the plain language of section 912, and accordingly constituted two offenses. *Cf. United States v. Solomon*, 726 F.2d 677, 679 (11th Cir.1984) (noting that separate acts, no matter how close in time, constitute separate offenses); *United States v. Thompson*, 624 F.2d 740, 743 (5th Cir.1980) (refusing to apply rule of lenity where statute prohibited dispensation of drugs and defendant caused a total of six dispensations on two separate days). We note that the Third Circuit recently construed a defendant's request for money, while impersonating a Social Security official, as an offense separate from the defendant's obtaining of the funds one day later. *United States v. Wilkes*, 732 F.2d 1154, 1155 (3d Cir.1984).[6] We do not believe that Congress intended the number of offenses a defendant commits under section 912 to depend upon the success of his fraudulent endeavors. As a result, we find that defendant's two demands for license plates and drivers license forms from John Dottenwhy constituted separate offenses. Because counts 33 and 34 charged separate offenses, the counts were not multiplicitous and defendant cannot challenge his convictions or sentences on these counts on the ground that they subjected him to multiple punishment for the same offense.

## IV. LESSER INCLUDED OFFENSES

Next, defendant contends that his convictions and sentences for both possession of a Department of Defense patch and impersonation of a Department of Defense official amounted to multiple punishment for the same offense because possession of the patch was a lesser included offense of false personation on the facts of this case. As a result, defendant argues that we must order the district court to vacate his convic-

tions and sentences on either the possession offenses or the impersonation counts.[7]

We agree that separate convictions and sentences for greater and lesser included offenses result in multiple punishment for the same offense, and subject a defendant to double jeopardy. *Brown v. Ohio*, 432 U.S. 161, 168–69, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977). The test enunciated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), determines whether two offenses stand in this relation to each other. *Cf. Albernaz v. United States*, 450 U.S. 333, 337–38, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981). As the Supreme Court observed in *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182:

> The applicable rule is that where the same act or transaction violates two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Defendant concedes that a literal application of this *Blockburger* test, based on a comparison of the statutory elements making up the possession and impersonation offenses, would result in a finding that these two statutory provisions established separate crimes and not the same offense. Both provisions, defendant concedes, require proof of some element that the other does not. Section 701, the possession offense, requires proof that defendant possessed official insignia although section 912, the impersonation offense, does not. 18 U.S.C. §§ 701, 912 (1976). Similarly, section 912 requires proof that defendant demanded or obtained an item of value while pretending to be a U.S. official although section 701 does not. *Id.*

Defendant maintains, however, that the *Blockburger* test requires more than mere

---

6. The Third Circuit also construed each occasion, during a three-month period, on which defendant obtained funds from the same victim as a separate offense. *United States v. Wilkes*, 732 F.2d 1154, 1160 n. 5 (3d Cir.1984).

7. Because we have already ordered the district court to vacate three of defendant's four possession convictions and sentences on remand, this contention relates only to the single conviction and three-year sentence for possession of an official badge that will remain after the district court's corrective action.

examination of the statutes at issue. Defendant contends, for example, that courts applying the *Blockburger* test to identify lesser included offenses must scrutinize the facts alleged in the indictment as well as the evidence proffered by the prosecution at trial. *See United States v. Cova,* 755 F.2d 595, 597 (7th Cir.1985). Because the prosecution made the same allegations and offered the same evidence to prove that defendant violated sections 701 and 912 in this case, defendant contends that these provisions established the "same offense" under *Blockburger* and, thus, his multiple convictions on these offenses subjected him to double jeopardy.

We disagree. We note, initially, that some conflict exists among the federal circuits with respect to the scope of a court's analysis under the *Blockburger* test. *See, e.g., United States v. Cova,* 755 F.2d at 597; *United States v. Coachman,* 727 F.2d 1293, 1301–02 (D.C.Cir.1984).

In *United States v. Woodward,* — U.S. ——, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam), however, the United States Supreme Court applied the literal *Blockburger* test to determine whether one offense was a lesser included offense of another. The Court compared the statutory elements of the offenses at issue, but declined to consider the evidence proffered to prove the offenses as required under the

broader approach urged by the defendant in the case before us.

The defendant in *Woodward* was indicted in one count of an indictment for making a false statement to an agency of the United States in violation of 18 U.S.C. § 1001,[8] and in a second count for willfully failing to report that he was carrying in excess of $5,000 cash into the United States in violation of 31 U.S.C. §§ 1101, 1058.[9] The very same act—answering "no" on a U.S. Customs form asking whether he was carrying more than $5,000 into the country—formed the basis of each count. A jury convicted the defendant on both counts and he received consecutive sentences for the two offenses. The Ninth Circuit reversed the conviction for the violation of 18 U.S.C. § 1001 as being a lesser included offense of 31 U.S.C. § 1058, finding that "a conviction under 31 U.S.C. § 1058 necessarily includes all elements of an 18 U.S.C. § 1001 violation." *United States v. Woodward,* 726 F.2d 1320, 1325 (9th Cir.1984), *rev'd,* — U.S. ——, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985). The United States Supreme Court reversed the Ninth Circuit stating, "The Court of Appeals plainly misapplied the *Blockburger* rule," and held that the two statutory sections delineated separate offenses. The Court reasoned:

> "(A) from any place within the United States to or through any place outside the United States, or
>
> "(B) to any place within the United States from or through any place outside the United States, or
>
> "(2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States in any amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section."
>
> Title 31 U.S.C. § 1058 (1976 ed.) provides:
>
> "Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both."
>
> Sections 1058 and 1101 were recently recodified without substantive change at 31 U.S.C. §§ 5322(a) and 5316. See Pub.L. 97–258, 96 Stat. 877 *et seq.*

8. Title 18 U.S.C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device or material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

9. Title 31 U.S.C. § 1101(a) (1976 ed.) provides in pertinent part:

"Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—

"(1) transports or causes to be transported monetary instruments—

[P]roof of a currency violation does *not* necessarily include proof of a false statement offense since Section 1001 proscribes the nondisclosure of a material fact only if the fact is conceal[ed] ... by any *trick, scheme,* or *device,* (Emphasis added.) A person could, without employing a 'trick, scheme or device,' simply and willfully fail to file a currency disclosure report.

105 S.Ct. at 612 (footnote omitted). The Court's analysis ignored the fact that the very same act—answering "no" on a U.S. Customs form—was used to prove both offenses and instead compared the statutory elements of the two offenses in finding the two statutes established two separate offenses, thus permitting separate punishment for each offense.

█ Applying the *Woodward* Court's reasoning to the facts before us and comparing the elements of a § 701 offense with the elements of a § 912 offense, we conclude the two provisions establish separate offenses since, as stated above, each offense requires proof of an element that the other does not.[10] Further, even under the broader approach suggested by the defendant, comparing the facts alleged in the indictment and the evidence proffered to prove the offenses at trial, our decision is the same. In this case, the possession counts alleged that defendant unlawfully possessed a Department of Defense shoulder patch on certain dates in September, 1978. The impersonation counts, on the other hand, alleged that defendant pretended to be a Department of Defense police

officer and demanded or attempted to receive certain items of value on the same dates. The evidence at trial corresponded to these distinct allegations in the indictment. The prosecution could not establish that defendant violated section 912 by means of possessing a Defense patch without proper authorization. As the district court instructed the jury, the prosecution had to establish that defendant willfully impersonated a Department of Defense official on the dates in question and demanded or obtained some item of value in the pretended character. Evidence that defendant staged this pretense by wearing a uniform including a Department of Defense patch would not suffice to establish the prerequisite demand or receipt of property under section 912, but would suffice to prove a violation of section 701.[11] Under these circumstances, the two crimes constituted separate offenses under the *Blockburger* test, and cumulative punishment on the offenses was proper. As a result, this court declines to reverse defendant's multiple convictions and sentences under sections 701 and 912 on the ground that these crimes were greater and lesser included offenses.

## V. CRUEL AND UNUSUAL PUNISHMENT

Defendant raises an additional challenge to his sentences on Counts 31 through 34 of the indictment, based on the Eighth Amendment. Specifically, defendant contends that his consecutive three-year sen-

---

**10.** In view of *Woodward,* we find it unnecessary to address *United States v. Stavros,* 597 F.2d 108 (7th Cir.1979), and *United States v. Cova,* 755 F.2d 595 (7th Cir.1985), on which Kimberlin in part relied on the present issue.

**11.** As we previously observed, the Government proceeded against defendant under offense 2 of section 912 and thus had to prove a demand or receipt of property by defendant in the pretended character. 18 U.S.C. § 912 (1976). If the Government had proceeded under offense 1 of section 912, the Government would have had to establish some "overt act" by defendant in keeping with the pretense. *Id.* On the facts of this case, we need not decide whether defendant's possession of the patch would have sufficed to

establish such an overt act. *See United States v. Harmon,* 496 F.2d 20, 21 n. 3 (2d Cir.1974) (per curiam) (noting that the pretense itself cannot serve as an overt act under the section). *Accord Ekberg v. United States,* 167 F.2d 380, 387 (1st Cir.1948). We note, however, that utilization of defendant's possession of the patch to prove violations of both section 701 and section 912, offense 1, would raise substantial double jeopardy problems. *See United States v. Vitale,* 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980). Because the Government proceeded under section 912, offense two, in this case, and possession of the patch could not establish a demand or receipt by defendant of some item of value, these questions do not confront us here.

tences on these counts constituted cruel and unusual punishment because the sentences were grossly disproportionate to the gravity of the offenses. Defendant urges this court to apply the three factors announced by the Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to reduce his sentences on this basis.

In *Solem*, the Supreme Court held that the Eighth Amendment required "proportionality" between sentences and crimes for which a defendant has been convicted. *Id.* at 290, 103 S.Ct. at 3010. The Court then set forth three factors for reviewing courts to apply in assessing the proportionality of sentences. *Id.* at 290–92, 103 S.Ct. at 3010–11. Specifically, the Court determined that reviewing courts should consider the gravity of the offense and the harshness of the penalty in a given case; the range of penalties for other crimes in the particular jurisdiction; and, the penalties imposed for comparable crimes in other jurisdictions. *Id.* The Court applied these factors to invalidate a life sentence without possibility of parole which had been imposed for defendant's false uttering of a $100 check.[12] *Id.* at 303, 103 S.Ct. at 3016.

■ The facts in this case ill resemble the extreme facts in *Solem* and, therefore, justify a different result. In this case, defendant received the statutory maximum sentence of three years' imprisonment on each of the four impersonation counts. The district court imposed the maximum sentence and ordered defendant's sentences to run consecutively because the court believed that a severe sentence was necessary to prevent defendant from resuming illegal activity on release from prison and because defendant's criminal conduct had resulted in serious damage to person and property. Under these circumstances, we cannot find that defendant's consecutive three-year sentences were disproportionate to his crimes under the Eighth Amendment.

In so ruling, we note that the Supreme Court admitted in *Solem* that invalidation of sentences for disproportionality should be rare. *See Solem v. Helm*, 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16. Specifically, the Court observed:

> [W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the rule of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Id.* We defer to this reasoning in the *Solem* opinion, and, therefore, hold that the gravity of defendant's crimes justified the consecutive three-year sentences imposed under counts 31 through 34. We find that defendant's sentence, though severe in comparison to sentences imposed for other crimes within this jurisdiction, *see United States v. Bilanzich*, 771 F.2d 292 (7th Cir. 1985), and sentences imposed for similar crimes elsewhere, *see United States v. Wilkes*, 732 F.2d at 1154, was appropriate given the unique facts of this case. The sentence accordingly did not constitute cruel and unusual punishment.

## V. RECUSAL OF DISTRICT JUDGE

■ Defendant's final challenge to the district court's denial of his motion to correct an illegal sentence relates to the identity of the district judge who denied defendant's claim. Specifically, defendant contends that this court must vacate Judge Noland's denial of Rule 35(a) relief to defendant because Judge Noland previously

---

**12.** The trial court had enhanced the defendant's sentence under South Dakota's recidivist statutes because defendant had accumulated six pri- or nonviolent felony convictions. *Solem v. Helm*, 463 U.S. 277, 282, 103 S.Ct. 3001, 3005, 77 L.Ed.2d 637 (1983).

had recused himself from further consideration of defendant's case. Judge Noland issued his recusal order *sua sponte* immediately after sentencing defendants on Counts 26 through 34, subsequent to defendant's first trial. Despite this recusal order, Judge Noland denied two post-trial Rule 35 motions filed by defendant. As we have indicated, Judge Noland's denial of defendant's second Rule 35 motion forms the basis of the present appeal.

Defendant contends that Judge Noland recused himself from further consideration of defendant's case because Judge Noland harbored personal bias or prejudice against him. *See* 28 U.S.C. § 455 (Supp.1985). Otherwise, defendant maintains, Judge Noland would have had a "duty to sit" on all proceedings involving defendant's case. *See Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 525–26 (D.S.C.1975).

We disagree. We observe that this court already has determined that Judge Noland disqualified himself from further participation only on proceedings relating to Counts 1 through 24 of the indictment. *See United States v. Kimberlin*, 675 F.2d 866, 868 (7th Cir.1982). Judge Noland apparently issued this limited recusal order because he had read a presentence report containing potentially prejudicial information prior to sentencing defendant on Counts 26 through 34. *Id.* The cases indicate that, although applicable law may not require a judge to recuse himself from further participation in a defendant's case under similar circumstances, *see, e.g., United States v. Harris*, 542 F.2d 1283, 1304 (7th Cir.1976); *United States v. Clark*, 605 F.2d 939, 942 (5th Cir.1979) (per curiam); *United States v. Frezzo*, 563 F.Supp. 592, 594–95 (E.D.Pa.1983), *aff'd*, 734 F.2d 8 (3d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 380, 83 L.Ed.2d 315, a judge's decision to do so may constitute a proper exercise of discretion. *See United States v. Bunch*, 730 F.2d 517, 519 (7th Cir.1984); *United States v. Small*, 472 F.2d 818, 822 (3d Cir.1972); *United States v. LeFrere*, 553 F.Supp. 133, 134 (C.D.Ill.1982). In this case, we believe that Judge Noland's recusal from participation in proceedings on

Counts 1 through 24, in order to prevent improper influence from information contained in a previously considered presentence report, was a reasonable exercise of his discretion. *Cf. United States v. Clark*, 398 F.Supp. 341, 363 n. 14 (E.D.Pa.1975), *aff'd*, 532 F.2d 748 (3d Cir.1976). Because Judge Noland limited his recusal order to Counts 1 through 24 of the indictment, he properly decided defendant's challenge to the sentences imposed on Counts 26 through 34. *Cf. Burris v. United States*, 430 F.2d 399, 402 (7th Cir.1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). We therefore decline to reverse Judge Noland's denial of defendant's Rule 35 motion on the ground that another judge should have decided it.

## VI. CONCLUSION

We have reviewed defendant's numerous challenges to the legality of his sentences under 18 U.S.C. sections 701 and 912. We find that any duplicity existing among the counts charging these offenses constituted harmless error on the facts of this case and that these crimes were not greater and lesser included offenses. Furthermore, we agree that defendant's consecutive three-year sentences on the section 912 offenses did not constitute cruel and unusual punishment. Moreover, we find that Judge Noland was the proper party to determine defendant's Rule 35(a) motion. We reverse, however, the district court's determination that Counts 26 through 29 of the indictment were not multiplicitous and accordingly instruct the district court to vacate three of defendant's convictions and sentences on these counts on remand. We therefore AFFIRM IN PART and REVERSE IN PART the district court's denial of defendant's request for Rule 35(a) relief.